Graham, Judge,
delivered the opinion of the court:
This claim grows out of a contract of date July 1, 1920, for 67,200 tons of bituminous coal run-of-mine, at $4.50 per ton, unit price. The contract provided that—
“The contractor shall furnish and deliver to the United States, and the United States shall accept and pay for, the articles of work described, and upon the terms and conditions set forth in ‘Schedule A’ attached hereto and by reference made a part hereof.”
Schedule A provided, inter alia, that the coal was to be delivered f. o. b. mines, Riley, Vigo County, Indiana, and the schedule of delivery was as follows:
“As called for on or before June 30, 1921, by Camp Quartermaster, Camp Custer, Mich.”
Schedule A also contained the following provision:
“At expiration of this contract any undelivered material not covered by calls will be automatically canceled.”
The contract was approved September 8, 1920. The original contract, except Schedule A, with a few slight typewritten changes not important here, was a printed form of contract for supplies, and it clearly appears that as origi *58 nally drawn was never intended to apply to a contract such as the one under consideration.
Schedule A is a typewritten addendum to the printed contract and embodies the essentials of the real contract between the parties.
Between July 1, 1920, and October 19, 1920, the plaintiff was called upon to deliver 11,462.25 tons of coal to Camp Custer. The coal was delivered and the plaintiff paid in full.
On October 19, 1920, by reason of the abandonment of Camp Custer as authorized and directed by the Chief of Staff of the War Department on August 13, 1920, the plaintiff was notified by the defendant that no more coal would be needed or required or called for delivery at that point.' At the time of this notification the plaintiff did not have any coal on hand for shipment. Neither did the plaintiff call upon the McClelland Coal Company, from which it secured its supply, to furnish any coal for said camp after receiving said notification. After the abandonment of Camp Custer as aforesaid, the Quartermaster General directed the cancellation of the plaintiff’s contract, and the plaintiff was informed to that effect. The plaintiff owned no coal and supplied it by means of an agreement with the McClelland Coal Company, a mine owner and producer of coal, to take such quantity of coal from the latter as the plaintiff could sell. Upon call by defendant for delivery, it was the plaintiff’s practice to verbally request said McClelland Coal Company to prepare and ship the amounts so called for. On April 1, 1921, the McClelland Coal Company shut down its mine, and about August, 1921, sold its stock and plant, and discontinued business by reason of insolvency.
As stated, the notification to stop delivery of coal occurred on October 19,1920, and the plaintiff filed its original petition in this court on January 3, 1924. In that petition it sought to recover an alleged amount expended for plant, facilities, and equipment by the McClelland Coal Company, as was properly apportioned “ to the articles or work, the delivery or performance of which was terminated on October 19, 1920,” amounting to $28,056.56, and also for depre *59 ciation or amortization of plant and facilities and equipment at the McClelland Coal Company as an expense in the performance of the contract under consideration amounting to $11,107.07. Thereafter, on May 9, 1927, an amended petition was filed, based upon a breach of the contract by cancellation, and for a recovery of damages for loss between the market value of the undelivered coal and the contract price, and also for obligations incurred prior to October 19, 1920, in connection with the performance of the contract, for facilities, plant, and equipment and depreciation on said facilities, plant, and equipment. It will thus be seen that the original petition was filed for a recovery under the terms of the contract where there had been a termination of the contract by the defendant under paragraphs b and c of section 2 of the contract providing for termination of it in the public interest. The second petition is based upon a claim of breach of the contract by cancellation.
As to the first of these petitions it is not contended that the fifteen days’ notice in writing from the contracting officer as therein required was given to make the termination effective. Nor is it averred, as alleged in the second petition that the contract was canceled or that it was breached.
Without at present considering the question whether the plaintiff could file an amended petition more than s,ix years after the breach occurred, if breach there was, setting up a recovery upon the ground of breach, we will consider the meaning of the contract.
It may be that the plaintiff by reason of the action of the Government suffered a hardship in connection with this contract, but it .is not the province of the court to make contracts. Its function is to construe and enforce them as it finds them, and as the parties have made them. As stated, Schedule A, which is the heart of this contract, being a typewritten addendum • to it, provides in the schedule of delivery as to the coal contracted for, that it should be delivered as “ called for on or before June 30, 1921,” by the camp quartermaster at Camp Custer, Mich. Had this been the only provision, there might have been room for the *60 question as to whether a failure upon the part of the camp quartermaster at Camp Custer to call for a part of the coal on or before June 30, 1921, was a breach of the contract and whether this provision relieved the Government of the obligation to take all of the coal contracted for. Certain it is under this provision that the Government was not obligated for any coal not called for after June 30, 1921. If that be true, then this paragraph would seem to be meaningless, because it undoubtedly fixed the time within which the coal was to be called for and delivered, as the quartermaster at Camp Custer might determine. It may be questioned whether the Government was obliged to call all of it before June 30, 1921, as it was not obliged to call for any after that date, and if it was not obliged to call for any after that date it had an optional call which must necessarily apply to the time before that date.
However, we do not seem to be left in doubt as to this last conclusion. Schedule A. further provides:
“At expiration of this contract any undelivered material not covered by calls will be automatically canceled.”
If this provision is to be given a meaning and a reasonable construction, and it must be, it means that the Government was only called upon to take such an amount of the whole-contracted for as it might order prior to the termination of the contract on June 30,1921, and that any amount which had not been ordered prior to- that date would be automatically canceled and the Government not be required to order or accept it. Or, to state it otherwise, the meaning of this clause is that at the expiration of the contract the Government was only to be held for such coal as it had ordered prior ” to the date of termination. While it is true that the Government on October 19th notified the plaintiff that it would order and accept no more coal, the plaintiff was in no worse-condition by reason of this order than it would have been if the Government had remained silent until the 30th of June, 1921, the date of the termination of the contract, without ordering any more coal than it had ordered prior to October 19, 1920. In fact the notification to the plaintiff would seem to have been unnecessary upon the part of the *61 Government. It clearly was in the interest of the plaintiff and did not affect the interests of the Government, as the plaintiff would naturally desire to know as soon as possible how much of this coal the Government intended to order and accept.
When the contract terminated on June 30, 1921, there remained of the original 61,200 tons covered by the contract, undelivered, 55,737.15 tons, and this undelivered balance under this provision of the contract was automatically canceled as “ undelivered material not covered by calls.”
We do not see how any other conclusion can be reached without ignoring the plain meaning of the language of this last provision in Schedule A. Our conclusion is strengthened by reading this provision in connection with the other quoted provision regulating the schedule of deliveries and.providing that they should be made “ as ordered.” The two taken together conclusively preclude the plaintiff’s right to recover. In view of this conclusion it is unnecessary to pass upon the question of the statute of limitations in connection with the plaintiff’s right to recover upon the ground set up in the second petition, or to pass upon, the further question raised in the case, that the President, as Commander in Chief of the Army through the Chief of Staff, exercised a right of sovereignty in the Government in ordering the abandonment of Camp Custer, and that as this abandonment was the reason, and at the time given as the reason for not ordering any more coal under this contract, the plaintiff’s loss was incidental to the exercise of a sovereign right, and any loss thereby occasioned can not be recovered. Horowitz v. United States, 267 U. S. 458; Knox v. Lee, 12 Wall. 457, 550, 551; Jones & Brown v. United States, 1 C. Cls. 383; Wilson v. United States, 11 C. Cls. 513.
Even if we did not hold, as we do, that the defendant did not breach the contract by not ordering and accepting the balance of the coal, and even if we did not hold that the provision above quoted automatically terminated the contract and further delivery of coal not ordered, the plaintiff still could not recover under the termination clause of the contract, supra, for the items of loss and obligations in *62 curred specified in the original petition. These expenditures and losses, if made or incurred, were made and incurred not by the plaintiff but by the McClelland Coal Company with which the plaintiff as its selling agent had an agreement to handle its coal. There was no privity between the Government and the McClelland Coal Company, and nothing in the contract indicates in any way that the Government intended to be bound for any expenditures or obligations incurred by that company. Its contract was with the plaintiff, and these obligations and expenditures were not made by the plaintiff and could not have been in contemplation of the parties as liable to be made by the plaintiff, because, as was known to the defendant, the plaintiff was a mere selling agency and owned no coal and no mines of its own. That this was the situation clearly appears when it is seen that the plaintiff had no coal on hand at the time of the alleged termination of the contract on October 19, 1920, nor had it ordered any coal from the McClelland Coal Company for the fulfillment of this contract other than the coal which it had already delivered. No orders had been placed for the undelivered balance. It is also a question, if the McClelland Coal Company is to be taken, as is insisted, as the only source of supply, and that the plaintiff was the McClelland Coal Company, whether it was possible for it to have complied with its contract of delivery had the orders been given after the 15th of April, 1921, when the McClelland Coal Company shut down its plant.
Whatever may have been plaintiff’s conception of this transaction, the contract which it entered into must control, as it is in writing and signed by the parties. In substance it is a transaction of an optional character. While the plaintiff agrees to deliver coal up to a certain amount as called for and at a certain price, the Government on the other side only agrees to pay for so much of the stated amount as it may call for, it being distinctly stated in the contract that any amount not called for at the expiration thereof shall be canceled. It may be said that this is a somewhat one-sided contract, but that is not for the court to consider. No other satisfactory construction can be given it.
*63 The cases of Burton Coal Co. v. United States, 273 U. S. 337, 60 C. Cls. 294; Sinclair Coal Co. v. United States, 65 C. Cls. 704, and H. G. Kellogg et al. v. United States, 65 C. Cls. 717, are cited by the plaintiff. These cases are not in point. In the Burton Coal Co. case the whole of the amount of coal contracted for was purchased by the plaintiff, and there was no provision in the contract in regard to the coal being delivered as called for. That case went off on the ground that the Government had terminated the contract without complying with the requirements of section 2 of the contract as to notice.
In the Sinclair and Kellogg cases the Government had at the outset ordered all of the coal which was equivalent to purchasing all of the coal subject to future delivery as ordered. Here the Government ordered only part of the coal, paid for it according to the terms of the contract, and ordered no more, and this condition continued until the termination of the contract, when by its terms the Government was released from all obligation to take the balance of the coal.
The findings do not show what damage the plaintiff suffered by the alleged breach, or that it suffered any damage.
The original and amended petitions should be dismissed, and it is so ordered.
Sinnott, Judge; Geeen, Judge; Moss, Judge; and Booth, Chief Justice, concur.