Howell, Judge,
delivered the opinion of the court:
Plaintiff sues to recover damages sustained by reason of the Government’s breach of a contract for the manufacture of a quantity of metal Nurse Corps collar devices for the Navy Department.
On August 9, 1948, this Court entered an order herein limiting the hearing in the first instance to the issue of whether defendant is liable, leaving for further consideration the question of damages. Therefore, the sole question to be decided is whether there has been a breach of contract for which defendant is liable.
On October 14, 1943, the Navy Purchasing Office issued a Request for Tender requesting bids for the furnishing and sale to the Navy Department of certain insignia and devices for naval uniforms, including as Item 58 of the listed items, 25,000 pairs of “Devices, Collar, U. S. Navy, Nurse Corps, Metal, Pin-on, rights and lefts.” This Request for Tender contained a list of the insignia to be furnished, accompanied by a column headed “Quantity” at the top of which was inserted the note “(More or less).”1 Below this note was a statement of the quantity of each device for which bids were requested. At the top of the column listing the articles to be furnished, there appeared the following statement:
To be delivered all transportation charges paid to the Supply Officer in Command, Naval Clothing Depot, 29th St. & 3rd Ave., Brooklyn, N. Y., WITHIN 10 days, after receipt of first order; bulk orders WITHIN 30 days; additional orders to be delivered at the same rate, but to *223 begin after completion of preceding orders, in such, quantities of each item as may be required during the period beginning with date of contract and ending June 30, 1944.
NOTE: NO DELIVERIES SHALL BE MADE UNDER THIS CONTRACT UNLESS SPECIFICALLY ORDERED.
At the foot of this column there appeared this paragraph entitled “Indefinite Quantities”:
The uncertain and varying needs of the Navy (Government) make it impossible to determine the quantity or quantities of the articles required during the contemplated period of the contract. Estimated quantities are stated for information only. It is mutually understood and agreed that the Government will order and the contractor will deliver the quantities of the kinds of articles and materials described in the specifications that, in the judgment of the ordering officer, may be required during the contract period, except as may be otherwise indicated in the tender. These supplies will be ordered in such quantities for delivery in such forms and to such places provided for by the contract as the needs of the Naval Service require. Tenders made with the proviso that the total deliveries will not exceed a certain specified quantity will be considered, but the right is reserved to reject any tender which provides that the Government shall guarantee to take any definite quantity. [Italics supplied.]
On November 6,1943, plaintiff submitted a bid for the furnishing of various insignia and devices listed in the request for tender and included therein a tentative bid for the 25,000 Nurse Corps devices listed as Item 58. Plaintiff’s tentative bid on this item was based upon gold plating which differed slightly from the specifications stated in the request for tender.
On December 15, 1943, plaintiff entered into a contract with the defendant for furnishing nine of the items listed in the request for tender but not including Item 58, the metal Nurse Corps collar device. This contract incorporated all of the provisions of the request for tender quoted above, including Article 13 “Changes” which will be referred to later in this opinion.
*224 On February 9, 1944, tbe parties entered into a further agreement, designated “Extension Amendment No. 1” which was an addition and amendment to the contract of December 15,1943, and which provided as follows:
Contractor is hereby authorized, upon acceptance of this amendment as directed below, to proceed with the following extension of the above numbered contracts, or order, in addition to the quantities or services previously contracted for, at the price and subject to the terms and conditions hereinbelow specified:

This item is to be gold plated on sterling (not less than 3 pennyweight of gold) as per sample submitted to Naval Clothing Depot.
Except as herein modified, all the terms, conditions and stipulations of the said contract, including any amendments heretofore made, remain in full force and effect.
In deciding whether or not there has been a breach of contract on the part of the defendant for which it must respond in damages to plaintiff, it is obvious that we are called upon to consider a very delicate kind of contract dealing with “indefinite quantities.”
The general rule with reference to this type of contract was laid down in the case of Brawley v. United States, 96 U. S. 168,172, as follows:
* * * The addition of the qualifying words “about”, “more or less”, and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight.
If, however, the qualifying words are supplemented by other stipulations or conditions, which give them broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions. As, if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that *225 quantity with, slight and unimportant variations, but by what the receiving party shall require for the use of his mill; and the variation from the quantity named will depend upon his discretion and requirements, so long as he acts in good faith. * * *
In the request for tender, the parenthetical phrase “More or less” had been inserted at the head of the column denominated “Quantity,” but in the extension amendment these words were omitted. In the request for tender there appeared at the top of this schedule a paragraph relating to the period in which delivery was to be made “after receipt of first order” and then in capital letters this statement:
Note: No deliveries shall be made under this contract unless specifically ordered.
In the extension amendment after the paragraph first quoted above with respect to deliveries, there was this provision:
Delivery. — To Naval Clothing Depot, Brooklyn, N. Y., during the term of the contract ending June 30, 1944, as may be ordered by the Depot.” [Italics supplied.]
The extension amendment contained, in lieu of the provision for termination as contained in the original contract, the termination clause which is set forth in our finding 7.
The basic contract contained at the foot of the schedule the paragraph headed “Indefinite Quantities,” above quoted, which is most material to this litigation.
Under the language of the general rule governing this type of contract (Brawley v. U. S., supra), it is obvious that the quantity of 25,000 Nurse Corps collar devices was not inserted for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number. Stipulations were added which left the quantities to be ordered “in the judgment of the ordering officer”, which supplies would be ordered in such quantities for delivery “as the needs of the Naval Service require.” However, there was the over-all admonition that no deliveries should be made under the contract “unless specifically ordered.”
*226 This plaintiff had been bidding on Navy insignia contracts for over 20 years. In most of the other contracts these same provisions had appeared, and it had been plaintiff’s experience that the quantities ordered would be more or less than the approximate quantity stated in the contract. Thus, plaintiff could not now be heard to complain that there was a variation above or below the approximate quantity of 25,000, if such variation were governed solely by the judgment of the contracting officer and the needs of the Naval Service. As a matter of fact, if these were the only considerations to be made we would find ourselves confronted with the opinion of this court in Johnstown Coal & Coke Co. v. United States, 66 C. Cls. 616, where the Government was held liable for the full estimated quantity of 8,200 tons of coal when only 1,400 tons were ordered where there was no showing that the “actual requirements of the service” justified such variation.
The defendant argues that it has fully met this burden of proof by establishing that the change made in the design of the insignia relieved it from any obligation to accept additional quantities of the old design after the change was made. Nothing is said about “the needs of the Naval Service” for additional quantities of Nurse Corps Collar Devices, after such change was made.
This contract is somewhat different from the one involved in Bickett Coal & Coke Co. v. United States, 67 C. Cls. 53, upon which the defendant relies. There the contract called for the delivery of 67,200 tons of coal “as called for on or before June 30, 1921” and further, “At expiration of this contract any undelivered material not covered by calls will be automatically cancelled.” The court apparently decided the case on the basis of this last quoted clause and said that “the meaning of this clause is that at the expiration of the contract the Government was only to be held for such coal as it had ordered prior to the date of termination.” The court said that under these provisions the defendant was not even required to notify the plaintiff, as it did on October 19,1926, that no more coal would be ordered under the contract, because plaintiff was in no worse condition by reason of the notice than it would have been, had defendant remained silent until the termination date of the contract.
*227 Here plaintiff was authorized “to proceed” under the extension of the main contract with the manufacture of 25,000 Nurse Corps collar devices, with special dies “used only for the manufacture of the devices ordered by the Government under this order and not for devices for any other purpose.” According to our findings, it would have required plaintiff 90 days (finding 12) to manufacture a total of 25,000 pairs of the devices.. When this extension amendment was entered into on February 9,1944, plaintiff “proceeded” to place itself in position to deliver 25,000 collar devices within 90 days, if called upon to do so by defendant. True, no deliveries were to be made under the contract unless ordered, but under the circumstances plaintiff could not sit idly by and wait for orders and still be able to deliver anything like 25,000 pairs of devices, especially in view of the language relating to time of delivery contained in the request for tender, viz, “Time of Delivery is of the essence of the contract.”
After plaintiff had delivered 3,388 pairs of the devices, defendant issued an order on April 14, 1944, covering this quantity and later paid for them at the rate specified in the extension amendment. Plaintiff continued to manufacture the devices and delivered quantities of them on April 19, 22, and 26, 1944, but all of these deliveries'were rejected on May 2 and 9, 1944, for the reason that no order had been placed for the quantities delivered.
On April 15, 1944, the Secretary of the Navy had approved a change in the design of the collar devices and on April 22, 1944, the design change was reported to the Permanent Naval Uniform Board. The exact time when the change actually became official is not shown by the evidence before us, but certainly the facts disclose that a change in the design of the device must have been under consideration for some time.
Plaintiff, however, was never notified of any such change until the latter part of June 1944, when upon advising defendant’s agent that a considerable quantity of the devices were on hand and ready for delivery, plaintiff received the information that none of the devices had been ordered because a change had been made prior to that date.
Under the general rule quoted above from Brawley v. United States, supra, it will be noted that an element of good faith is required of the party on the receiving end of an *228 “indefinite quantities” contract. This court at an early date (Field v. United States, 16 C. Cls. 434, 448) recognized this principle in the following language:
In cases of this class, the main object is to provide for all the supplies or service which the wants of the Army at the particular places named may require.
As it is not possible always to know in advance exactly what those wants may be, an approximate quantity or amount is inserted, and any variation of increase or decrease is left to be determined by future circumstances.
The risk arising from this uncertainty is shared in part by each party to the contract, and each is bound to act in good faith towards the other, to exercise due diligence, and to keep himself and the other party informed of whatever facts within the means of his own knowledge and information may contribute towards rendering certain that which is left undetermined.
Here the defendant knew that plaintiff was manufacturing devices under this contract as soon as it made its first delivery on April 6,1944. The defendant also knew at least as early as March 29,1944, that a change in the design of the particular ornament had been approved (finding 11). Yet, defendant did not disclose this information to plaintiff until the latter part of June 1944 and, in fact, accepted and retroactively ordered 3,388 of the devices after the change had been first recommended.
Article 13 of the request for tender (Article 2 of the contract) contained this language with reference to “Changes”:
The specifications, drawings, or designs applicable to any of the items covered by this contract * * * or any provision with respect to the method of shipment or packaging or place of delivery may he changed at any time hy the contracting officer hy written notice given to the contractor. * * * If any such change so ordered shall involve an increase or decrease in the amount or character of the work to be done under this contract or in the time required for its performance, an equitable adjustment shall be made in the contract price and in such other provisions of the contract as may be necessary and the contract shall be modified accordingly. * * *
On April 15, 1944, the Secretary of the Navy approved the design change of the insignia covered by plaintiff’s contract. Surely at this time or shortly thereafter, the contracting of- *229 fleer, who was charged with, the responsibility of obtaining such devices for the Navy Department, received notice of this order change. Whether he did or not, we must attribute and charge him with notice because of his capacity as a responsible agent of the Secretary of the Navy, who was the head of the Department of the Navy. The failure of the contracting officer to promptly notify plaintiff in writing of this change in design constituted, in our opinion, not only a breach of Article 2 of the contract but a violation of the standard of good faith ordinarily required of the Government acting through its agents. Struck Construction Co. v. United States, 96 C. Cls. 186.
Plaintiff, as a result of the lack of such notice, continued to manufacture the out-moded devices until June 1944, having made deliveries in the meantime, without orders, on April 19, 22, and 26. On May 2 and 9, 1944, when these April deliveries were rejected, the reason given for such rejection was that no order had been placed for the quantities delivered. It was only when plaintiff advised defendant that a number of the devices were on hand and ready for delivery in late June 1944 that defendant’s agents finally informed plaintiff that none of the metal Nurse Corps devices had been ordered for the reason that the design of the device had been changed at a prior date.
Thus, it appears that the agents of the Government were relying solely upon those portions of the request for tender and the contract itself which provided in effect that no deliveries should be made unless ordered. However, the contractor was proceeding in good faith to manufacture 25,000 pairs of the collar devices as “in the judgment of the ordering officer may be required during the contract period * * * to be ordered in such quantities for delivery * * * as the needs of the Naval Service require. * * *” (“Indefinite Quantities,” supra).
In effect, the contractor agreed to proceed under a contract for the manufacture of a quantity of special collar devices within a fixed period of time. But the defendant says that all it was required to do after so obligating plaintiff, was to order or not order, to pay only for deliveries ordered, and actually change the design of the device covered by its contract without notifying plaintiff in time to prevent increasing *230 losses occasioned by the manufacture in good faith of sufficient quantities of the device.
Unless all considerations of equity and justice are disregarded and contracts of this type turned into pure gambling transactions with the odds always in favor of the Government, we believe a high degree of good faith should be required on the part of the Government and its agents.
The defendant had ample authority to terminate this contract without harming plaintiff in any way, under the provisions of the termination clause which is set out in our finding 7. Having in mind the type of contract here involved, the change in the design of the devices and all the other attendant facts and circumstances, it is indeed difficult to find a reason for defendant’s failure to terminate the contract as it had a right to do under these provisions. Obviously the contract did not contemplate that the Government could change the design of the articles involved and then not give the plaintiff some form of notice either of the change or of its desire to terminate the contract.
While most of the argument has been concerned with a quantity “less” than 25,000 devices, it is well to recognize that plaintiff obligated itself at the same time to deliver “more.” Charles Nelson Co. v. United States, 56 C. Cls. 448, involved a contract calling for delivery of about 1,675,000 feet of Douglas fir during the term of the contract. The Government ordered and the contractor delivered 3,688,259 feet of lumber. In a suit by plaintiff to recover the difference between the market price and the amount it was paid for the quantity delivered in excess of 1,675,000 feet, the court dismissed the petition and said:
The plain purpose of the contract was to supply a need during the period named and not to furnish a specific quantity. The clause [It shall be distinctly understood and agreed that it is the intention of the contract that the contractor shall furnish and deliver any quantities of Douglas fir which may be ordered for the naval service at the place named during the period ending December 31, 1917, irrespective of the estimated quantity named * * *] is susceptible of no other construction.
There were no words in the contract before us which qualified the indefinite quantities of devices called for in such a way that the Government was absolutely relieved from giv *231 ing plaintiff any notice of the quantity required or that a change in design had been made. In Bickett Coal & Coke Co. v. United States, supra, the plaintiff was admonished that “at expiration of this contract any undelivered material not covered by calls will be automatically cancelled.” We think any analogy between that case and the one before us is further weakened by the fact that a distinction should be made between a product of nature such as coal, lumber, or stone, on the one hand, and manufactured devices on the other. Quantities of coal not called for delivery within a specified period of time would find a ready market elsewhere, whereas quantities of devices manufactured for a special customer with special dies could not otherwise be disposed of.
It is urged that plaintiff is deprived of its right of action by reason of its failure to appeal from the determination of the contracting officer under Article 17 of the contract relating to disputes concerning questions of fact arising under the contract. Plaintiff wrote the Paymaster General of the Navy Department on October 9, 1944, filing its claim for damages alleged to have been suffered by reason of the change in design and the failure of defendant to accept further deliveries under the contract. This claim was denied on November 13, 1944, by the Bureau of Supplies and Accounts; plaintiff requested a reconsideration of the decision and on March 31, 1945, the Navy Department affirmed its prior decision.
The failure of the plaintiff to submit this matter to the contracting officer in no way precludes this court from granting relief when a pure question of law, such as is presented here, is involved. Pfotzer v. United States, 111 C. Cls. 184, 227; certiorari denied 335 U. S. 885; Callahan Construction Co. v. United States, 91 C. Cls. 538, 616.
We hold on the evidence that defendant breached its contract with plaintiff and plaintiff is entitled to recover. The decision as to the amount of plaintiff’s damage is reserved for determination after further proceedings under Rule 39 (b).
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.