Harvey Ward **LOCKE**

v.

**UNITED STATES.**

No. 258–59.

United States Court of Claims.

Nov. 2, 1960.

Harvey Ward Locke, pro se.

David V. Anthony, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

This is a suit, first, for lost profits resulting from an alleged breach of a requirements contract held by plaintiff with the General Services Administration. The contract covered the repair of typewriters in the San Diego, California, area. Secondly, plaintiff sues for damages allegedly resulting from the Government's improper refusal to accept his bid on another typewriter-repair contract for the Fort Worth, Texas, area. For convenience we shall refer to these as the California contract and the Texas contract. The case comes before the court on the parties' cross-motions for summary judgment under Rule 51, 28 U.S.C.A.

I

We shall consider the California contract first. The plaintiff, Harvey Ward Locke, was the owner of a typewriter-repair company doing business variously under the names "Ward's Typewriter Repair" and "Allied Typewriter Company." As Ward's Typewriter Repair, of San Diego, California, plaintiff was awarded GSA Federal Supply Schedule Contract GS–09S–1329. The contract covered the repair, maintenance and reconditioning of manual typewriters in the San Diego area for the period July 1, 1955, through June 30, 1956. Similar typewriter-repair contracts were awarded to three other local companies covering the same period of time. These contracts provided that upon an acceptable bid and a showing of responsibility [1] the contractor's name, address, and telephone number would be placed in a Federal Supply Schedule which was widely distributed to Government installations in the area. Apart from certain exceptional conditions not pertinent here, it was mandatory upon the various departments of the Executive Branch of the Federal Government in the area to use contractors whose names appeared in this schedule when typewriter-repair services were desired. (The Department of Defense was specifically excluded.) However, these agencies were at liberty to choose any name from the schedule and were not bound to proceed in the schedule in a given order. In addition to "mandatory use" all agencies of the Federal Government, particularly the Department of Defense, option-

[1] Plaintiff submitted a performance bond for $1,000.

ally might order repair services from contractors appearing in the schedule. Each bidder whose bid was accepted and whose name was listed in the schedule was obligated to perform all the services for which he contracted that resulted from the "mandatory" provisions of the contract. However, contractors were at liberty to decline those progressive awards which arose from the "optional" provisions of the contract.

Plaintiff operated under his contract for several months and received some business from the Government. But on February 2, 1956, the Government's contracting officer terminated the contract for default and plaintiff's name was stricken from the schedule. Other contractors in the schedule continued to receive Government business until the expiration of their contracts. Plaintiff filed an appeal with the Board of Review, General Services Administration, and following a full hearing,[2] the board rendered the following decision:

"1. Contract No. GS–09S–1329 was terminated for default on February 2, 1956, without proper cause.

"2. The Appellant's claim for the payment of $30,000 as compensation for lost profits is denied.

"3. The Appellant's claim for the payment of $60,000 as compensation for alleged defamation of character and loss of other business is denied."

Following this denial of relief the plaintiff filed his appeal to this court.

The question brought to this court for determination is what if any compensable damage did plaintiff suffer as a direct result of the Government's improper termination of plaintiff's contract. The Government says no damage has occurred and has moved to dismiss the complaint for failure to state a cause of action upon which relief can be granted. The plaintiff, appearing *pro se,* has alleged in his jumble of testimony, less explicitly but no less expressively, that various forms of damages have occurred. He has asked "this Court to assist him to see that justice does not suffer miscarriage under American Jurisprudence."

Simply phrased, the defendant takes the position that while the contract may have been improperly terminated no loss of profits is recoverable because the contract was a "requirements contract" and did not guarantee that *any* minimum requirement would exist. Furthermore, where a requirement did in fact occur, the contract by its terms did not guarantee that the Government would give all or any part of this requirement to the plaintiff. The contract merely provided that plaintiff's name would appear in a Federal Supply Schedule along with other typewriter-repair contractors. Certain Federal agencies could select typewriter-repair companies from the schedule to fulfill their requirements, if any. Furthermore, since plaintiff could not have demanded business while he remained in the schedule, he cannot now be heard to complain that he received no business, albeit he may have been improperly removed from the schedule. With this we cannot agree.

■ It is now beyond question that contracts for requirements do not lack mutality and are enforceable. In every case it is the reasonable expectation by both parties that there will be requirements on which the bargain is grounded. Ready-Mix Concrete Co., Ltd. v. United States, 130 F.Supp. 390, 131 Ct.Cl. 204; Walters v. United States, 130 F.Supp. 360, 131 Ct.Cl. 218; Gemsco, Inc. v. United States, 115 Ct.Cl. 209; Hirsch et al. v. United States, 104 Ct.Cl. 45; Johnstown Coal & Coke Co. v. United States, 66 Ct.Cl. 616. The facts, as alleged, show that plaintiff in the past had received substantially all of his business from Government agencies under similar contracts. We cannot believe that in this instance plaintiff bargained merely to have his name printed in the supply schedule. It appears more important that being in the schedule created a reasonable probability that business would be obtained. Particularly is this so when

2. May 8, 1959, Docket No. 331.

it is noted that among the four San Diego repair companies originally put in the schedule plaintiff was the low bidder.

We agree that nothing in the contract would have prevented the Government from enlarging its own repair facilities to fill completely its needs. This would have left nothing to be awarded under the Federal Supply Schedule contracts. But the facts as alleged show that the Government did have some service requirements beyond its own capacity. Presumably, these requirements were awarded to contractors in the schedule. Plaintiff's chance of obtaining some of these awards, by being in the schedule and competing with the other contractors, had *value* in a business sense. The Government by its breach deprived plaintiff of this value.

■ The defendant further takes the position that the fact of damage as well as the amount that resulted from the removal of plaintiff's name from the schedule is too speculative to permit of proof. But the constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Bigelow et al. v. RKO Radio Pictures, 327 U.S. 251, 265, 66 S. Ct. 574, 90 L.Ed. 652. Difficulty of ascertainment is not to be confused with right of recovery. Nor does it exonerate the defendant that his misconduct, which has made necessary the inquiry into the question of harm, renders that inquiry difficult. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684. The defendant who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong by insisting on proof which by reason of his breach is unobtainable. Crichfield v. Julia, 2 Cir., 147 F. 65. It remains true, however, that the plaintiff must meet a higher standard of proof to establish that he has sustained *some* injury than to fix the amount. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544.

If a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery. Story Parchment Co., supra. The amount may be approximated if a reasonable basis of computation is afforded. Eastman Kodak Co., supra; Palmer et al. v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. "All that the law requires is that such damage be allowed as, in the judgment of fair men, directly and naturally resulted from the breach of the contract for which the suit is brought." Needles et al. v. United States, 101 Ct.Cl. 535, 618. First-Citizens Bank & Trust Co. et al. v. United States, 76 F.Supp. 250, 110 Ct.Cl. 280, 327; Houston Ready-Cut House Co. et al. v. United States, 96 F.Supp. 629, 119 Ct.Cl. 120, 193. Certainty is sufficient if the evidence adduced enables the court to make a fair and reasonable approximation of the damages. Stern v. Dunlap Co., 10 Cir., 228 F.2d 939. In circumstances such as these we may act upon probable and inferential as well as direct and positive proof. Bigelow et al. v. RKO Radio Pictures, supra.

"Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery by rendering the measure of damages uncertain. Failure to apply [this rule] would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Bigelow v. RKO Radio Pictures, supra, 327 U.S. at page 264, 66 S.Ct. at page 580.

■ We are here concerned with the value of a chance for obtaining business and profits. The last time this question of recovery for a lost chance at business was put to this court, recovery was denied. Zephyr Aircraft Corp. v. United States, 104 F.Supp. 990, 122 Ct.Cl. 523, certiorari denied 344 U.S. 878, 73 S.Ct.

165, 97 L.Ed. 680. However, that case is not governing for there the court expressly found that the plaintiff never had *any* chance to obtain business. Here it appears that the plaintiff did have a chance of obtaining at least one-fourth of the total typewriter-repair business let by the Government. It is true that plaintiff's reasonable expectations might have been disappointed by the happening of diverse contingencies. We should not, however, overlook the fact that the plaintiff gave valuable consideration for the promise of a performance which would have given him a chance at business and profit. We believe that where the value of a chance for profit is not outweighed by a countervailing risk of loss, and where it is fairly measurable by calculable odds and by evidence bearing specifically on the probabilities that the court should be allowed to value that lost opportunity.

Therefore, we direct the trial commissioner to determine the following facts:

1. The total amount of typewriter-repair business let by the Government for which plaintiff would have been eligible under his contract but for the Government's breach. (This should be easily obtained from the Government's records.)

2. Whether there were any material facts that would have tended to prevent plaintiff from receiving his proportionate share of such business.

3. The average per unit cost normally incurred in performing repair work of the type here involved.

4. Expenses plaintiff necessarily incurred in preparing to fulfill his obligations under the contract. The expense of preparing the bid should not be included.

In view of the small amounts involved it is suggested that most of the above facts may be stipulated by the parties.

## II

Consideration of the Texas contract requires the recitation of additional facts. After the termination of the California contract and pending an appeal in the matter to the GSA Board of Review, plaintiff under the new name "Allied Typewriter Company," responded to invitations for bids DA–53100, GSA, Fort Worth, Texas. Plaintiff was low bidder on this contract but was denied the award of the contract on the basis of a determination by the contracting officer that plaintiff was not a responsible bidder.

Plaintiff appealed the determination of nonresponsibility concerning the Texas contract to the GSA Board of Review. The board in its decision dated December 30, 1957 (Docket 382), denied the appeal. Their holding was that the contracting officer, Fort Worth, Texas, could have done no differently considering the evidence before him. The very complete opinion of the board shows that the Texas contracting officer did consider the fact that plaintiff's California contract had been terminated. However, the board specifically found that apart from this consideration, the Texas contracting officer had ample evidence which in itself entirely justified his finding of nonresponsibility.

The plaintiff has loosed a barrage of complaints and requests based on the above facts. As best we can, we have sorted these into three main contentions:

"1. The Board of Review acted arbitrarily and capriciously in sustaining the determination of the Texas contracting officer that plaintiff was a nonresponsible bidder.

"2. Communications from the California contracting officers to the Texas contracting officer concerning plaintiff's past dealings in California were false and defamatory and injured plaintiff's business reputation.

"3. Plaintiff's failure to obtain the Texas contract was a direct result of the Government's breach of the California contract. Damages for this breach should therefore include the costs of preparing the Texas bid as well as profits lost because plaintiff failed to obtain the Texas contract."

We do not agree with plaintiff's first contention. Quite the contrary, the

transcript of the hearing as well as the board's opinion discloses that thorough and adequate consideration was given to plaintiff's case. The board's decision is entirely supportable in view of the record and we shall not disturb it.

■ Plaintiff's second contention sounds in tort and is beyond the jurisdiction of this court. Bornhoft v. United States, 137 Ct.Cl. 134.

. Considering now plaintiff's third contention. In the first part of this opinion we have indicated our willingness to permit the plaintiff an opportunity to prove damage where there appears but a reasonable probability that damage has occurred. But we cannot license plaintiff to attempt proof of entirely speculative causal relationships.

■ The Restatement of Contracts sets out the basic position long followed by this court:

"Compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." Section 330, 1932 ed.

Courts are frequently in the anomalous and difficult position of looking back to determine what the parties might reasonably have contemplated looking ahead. No ready rule of judging the foreseeability of injury exists. But an injury to be foreseeable must be the natural and proximate result of the breach. There must be no intervening efficient cause. The injury may be only indirectly produced but it yet must be capable of being traced to the breach with reasonable certainty. Myerle v. United States, 33 Ct.Cl. 1; Driscoll v. United States, 34 Ct.Cl. 508; Wyant v. United States, 46 Ct.Cl. 205; Gillespie v. United States, 47

Ct.Cl. 167; William Cramp & Sons Ship & Engine Building Co. v. United States, 50 Ct.Cl. 179; Needles et al. v. United States, 101 Ct.Cl. 535; Chain Belt Co. v. United States, 115 F.Supp. 701, 127 Ct.Cl. 38.

■■ We believe that the alleged injuries arising out of the Texas contract for which plaintiff petitions relief are too remote from the California contract to be here compensable. The refusal of plaintiff's bid on the Texas contract was not the natural and proximate result of the termination of the California contract. The GSA Board of Review examining the circumstances of the Texas contract found specifically that the Texas contracting officer could not by law and did not in fact refuse plaintiff's bid solely because his California contract had been terminated. There was ample other evidence, sufficient in itself, to justify the contracting officer's finding of nonresponsibility and his consequent refusal of plaintiff's bid. This case does not come within the rule of Heyer Products Co., Inc. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63.

As to the Texas contract alone, defendant's motion is granted and plaintiff's motion is denied. The petition as to that contract will be dismissed. As to the California contract, both motions are denied and this case is remanded to the trial commissioner for further proceedings consistent with this opinion.

It is so ordered.

DURFEE, LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.