ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Omran, Inc. | ) | ASBCA No. 63414 |
| | ) | |
| Under Contract No. W5J9JE-19-C-0003 | ) | |

APPEARANCE FOR THE APPELLANT:
R. Dale Holmes, Esq.
  Cohen Seglias Pallas Greenhall & Furman PC
  Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:
Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Nancy L. Pell, Esq.
Katherine M. Smith, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Middle East
  Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE STINSON ON THE
GOVERNMENT'S CONVERTED MOTION FOR SUMMARY JUDGMENT

By motion dated December 19, 2022, the government requested dismissal of this appeal filed by appellant Omran, Inc. (Omran), for failure to state a claim upon which relief can be granted (gov't mot.). With its motion, the government submitted a statement of relevant facts and provided numerous Rule 4 file citations in support of its contentions (*id.*). Appellant's opposition brief, filed January 18, 2023, likewise included proposed findings of fact with citations to the Rule 4 file (app. opp'n). The government filed a reply brief on February 17, 2023, but did not respond directly to appellant's proposed findings of fact (gov't reply). After reviewing the parties' briefs, by Order dated March 17, 2023, the Board determined the government's motion should be treated as a motion for summary judgment since both parties cited to numerous documents outside of the pleadings. (Bd. Order dtd. March 17, 2023, (citing *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920; *see* FED. R. CIV. P. 12(d))). The parties each submitted an additional brief, which included additional proposed findings of fact (app. reply; gov't sur-reply). For the reasons stated below, the Board denies the government's motion to dismiss and grants the government's motion for summary judgment.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

Request for Proposals and Contractual Provisions

1.  In August 2018, the U.S. Army Corps of Engineers (USACE or government) issued a Request for Proposals (RFP) for the design and construction of various Afghan National Army (ANA) Afghan Air Force (AAF) aviation enhancements for the airport located in Mazar-e-Sharif, Afghanistan (R4, tab 5 at 1, 31).  The RFP included design and construction of a Life Support Area expansion, a new mixed-use aircraft airfield, and other aviation enhancement facilities and utilities (*id.* at 101).

2.  The government awarded Omran Holding Group a firm-fixed price design build contract, Contract No. W5J9JE-19-C-0003 (the contract), on March 26, 2019 (R4, tab 12 at 1-2, 9).  Pertinent to this appeal, the contract included airfield work (design and construction) of "a new rigid paved taxiway, identified as 'Papa Taxiway,'" and an Armed Aircraft Apron (R4, tab 74 at 27, 38-40).  A novation dated September 7, 2021, transferred the contract to Omran, Inc. (compl. ¶¶ 2, 6).

3.  The contract stated that performance "may require work in dangerous or austere conditions," and cautioned that "[e]xcept as otherwise provided in the contract, the Contractor accepts the risks associated with required contract performance in such operations" (R4, tab 12 at 27).

4.  The contract also stated "[g]enerally, the Contractor is responsible for demobilizing all of its personnel and equipment from the . . . [a]rea" and "[t]he Contractor shall be responsible for the security of their equipment" (*id.* at 33, 38).

5.  The notice to proceed was issued on May 1, 2019 (R4, tab 13 at 1). Modification No. A00011 extended the performance completion date to December 22, 2021 (R4, tab 26 at 2).  Modification No. P00005 increase the total contract amount to $31,644,678.27 (R4, tab 31 at 3).

Facts Pertaining to Concrete Paving Equipment and Machinery

6. In December 2019, appellant completed the concrete placement for the Papa Taxiway shoulders, and in June 2020, completed the Armed Aircraft Apron shoulders (Sworn Statement of Gerard A. Castelli[1], ¶ 2).  This work was accepted for use and turned over to the government on November 19, 2020, although several punch list items remained that required correcting (R4, tab 77 at 1-2).

---

[1] The sworn statements and declarations submitted by both appellant and the government with the reply and sur-reply, respectively, will be cited independently to keep citations concise.

7. Problems regarding the taxiway shoulder pavement slabs (heaving and cracking) were identified in the fall of 2020, although the parties debate in their respective submissions which party first identified the issue (*see* Sworn Statement of Gerard A. Castelli ¶ 3; *contra* gov't sur-reply ¶ 2). In October 2020, Omran submitted a corrective action plan (CAP) addressing this issue (Sworn Statement of Gerard A. Castelli ¶ 3). The CAP provided a range of options from full replacement of the shoulder pavement and subgrade to individual slab replacement or repairs (R4, tab 75 at 59-67; Sworn Statement of Gerard A. Castelli ¶ 3)

8. After receiving technical reviews and comments from the government, appellant submitted revised CAPs on October 27, 2020, and May 22, 2021 (R4, tabs 75 at 2-9, 59-67; 76 at 6-14; 79 at 2-6; Sworn Statement of Gerard A. Castelli ¶¶ 4-5).

9. According to Omran, at the time of evacuation of the site, appellant's paving equipment remained on the base for the potential reconstruction of the Papa Taxiway and 40 percent of the Armed Aircraft Apron shoulders (Sworn Statement of Gerard A. Castelli ¶ 12). Omran maintains that it would have taken approximately 14 days to disassemble the concrete batch plant and remove it from the site, and that other associated concrete equipment supplies and vehicles could have been removed in less than five days (*id.* ¶ 13). Omran also maintains that it did not remove the equipment because it was waiting for direction from the government to take no further action on the shoulder pavement (Sworn Statement of Gerard A. Castelli ¶ 15). The government states that, as set forth in appellant's proposed finding of fact ¶ 8.c., Omran was informed verbally on August 8, 2021, that no further work would be performed on the Papa Taxiway shoulder pavement (app. reply at 2; Decl. of John Clark ¶ 10).

Facts Pertaining to Power Tie-In

10. The contract required appellant to connect to the base power system from an area where power was supplied to the base from a commercial source (R4, tab 74 at 34). During performance, the parties discovered that the power hookup location did not have capacity sufficient to provide electrical power to the project site (Decl. of Javaughn Perkins ¶¶ 8-9; Sworn Statement of Gerard A. Castelli ¶¶ 19-20).

11. The parties met with the owner of the off-base power grid to discuss a solution to the power capacity issue. In the meantime, appellant, at the request of the government, offered alternative solutions, including the use of generators. (R4, tab 85 at 6) While the government states that the use of generators was for multiple projects, appellant states that the generators were brought on site for the sole purpose of the electrical tie-in issue (Sworn Statement of Gerard A. Castelli ¶¶ 23, 29; Decl. of Javaughn Perkins ¶ 14). Regardless, it is undisputed that generators were onsite when

3

the evacuation occurred (Sworn Statement of Gerard A. Castelli ¶ 28; gov't mot. at 3 (¶ 13)).

12. As of August 8, 2021, there was no long-term resolution to the electrical tie-in issue, and the use of generators continued (Sworn Statement of Gerard A. Castelli ¶¶ 22, 25-26).

Fall of Kabul to the Taliban, Evacuation of Airfield

13. On August 14, 2021, the ANA directed appellant to evacuate the project site in response to the Taliban takeover (R4, tabs 3 at 6-7; 4 at 4). At the time of evacuation, appellant states it was unable to remove the paving equipment from the work site (Sworn Statement of Gerard A. Castelli ¶ 11). On August 16, 2021, the Department of the Army, Expeditionary District, USACE, issued a suspension of work order (R4, tab 36).

14. On August 18, 2021, four days after evacuation, the government sent appellant Serial Letter C-0039, which indicated it "received correspondence from the Defense Security Cooperation Management Office – Afghanistan . . . on August 6, 2021, directing USACE to perform no further action in relation to correcting the ongoing tilting of the shoulder panels" (R4, tab 80 at 1).

15. Omran alleges in its complaint that "[f]or more than a month before the Taliban takeover, in weekly meetings, Omran repeatedly informed [the Government] that areas of Afghanistan and border crossings were being controlled by Taliban forces" and "[m]aterials and supplies were being stopped at the borders thereby affecting the delivery to the job site" (compl. ¶ 22).

16. Omran alleges in its complaint that "[d]uring the first two weeks of August 2021, [the Government] could have and should have seen the Taliban take over key provincial capitals and key military installations" (compl. ¶ 23).

Omran's Claim and Contracting Officer's Final Decision

17. On May 7, 2022, appellant submitted a certified claim for two issues: (1) additional work related to the existing subgrades under the airfield pavements; and (2) equipment that was on the site and was lost or unrecoverable due to alleged untimely and improper decision making by the government which forced appellant to unnecessarily maintain its equipment on-site (R4, tab 3 at 2-7). Omran's initial claim for the cost of lost equipment and materials was $2,091,610.25 (R4, tab 3 at 7). After submission of its certified claim, Omran reduced its claim amount to $1,488,491.50 (compl. ¶ 15).

18. The contracting officer issued a final decision dated July 11, 2022, denying in full the second issue presented in appellant's claim, "Unrecoverable Equipment and other Materials Stranded at Project Site" (R4, tab 4 at 1). The final decision stated that the first issue presented in appellant's claim "will be addressed by separate correspondence" (*id.*).

19. On September 21, 2022, appellant timely appealed to the Board the government's July 11, 2022, denial of its claim. The appeal here concerns only the second issue asserted in appellant's claim.

## DECISION

### I. Standard of Review

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); FED. R. CIV. P. 56(a). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in the opposing party's favor." *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998). A party challenging a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

When considering motions for summary judgment, the evidence produced by the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Europe Asia Constr. Logistic*, ASBCA No. 61553, 19-1 BCA ¶ 37,267 at 181,351 (citation omitted). However, the non-movant must set forth specific facts demonstrating the existence of a genuine issue of material fact; mere conclusory statements and bare assertions are inadequate. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); *Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient . . . .").

### II. Contentions of the Parties

Appellant's complaint alleges that the government failed "to make a timely decision or take contractual action concerning the taxiway pavement and the electrical tie-ins which would have enabled Omran to demobilize the associated equipment and

material" (compl. ¶ 27) and that the government's "improper and untimely decision making on the taxiway shoulder and electrical tie-in issues is the direct and proximate cause of Omran's loss of its equipment and material" (compl. ¶ 21). In its initial motion to dismiss (submitted in response to Omran's complaint in lieu of an answer), the government argued that appellant failed to state a claim upon which relief could be granted because the acts of a third party resulted in the damages alleged by appellant (gov't mot. at 1). Specifically, the government argued it is not liable for acts of a third party, absent fault, negligence, or unmistakable agreement, especially when the intervening acts break the causal link between the government's alleged misconduct and the damages incurred (gov't mot. at 7, 12).[2]

Appellant's opposition to the government's motion argued that appellant had stated a claim upon which relief could be granted, setting forth allegations of fault and negligence by the government (app. opp'n at 5-9). In its reply brief, the government reiterated its argument that it was not liable for appellant's damages because of intervening acts of the Taliban (gov't reply at 10). The government also argued that "based on the allegations set forth in Omran's Complaint, and other integral documents including Omran's certified claim, the loss of Omran's equipment and materials due to these third-party actions was not foreseeable at the time of contract formation," and, accordingly, "damages cannot be assessed against the Government for the loss of Omran's equipment and materials" (*id.* at 8-9). In its reply brief, although appellant set forth additional support (including a sworn statement by one of its employees) for its position that the government's negligence and fault led to the damages (app. reply at 8-9; Sworn Statement of Gerard A. Castelli)), it failed to address the government's assertion that Omran's breach damages were not foreseeable at the time of contract award.

III. The Government's Administration of the Contract

Appellant's briefs focus on whether the government properly administered the contract and assert that appellant has presented a genuine issue of material fact which precludes summary judgment. Appellant alleges fault or negligence by the government in its administration of this contract (app. opp'n at 7; app. reply at 8-9). The government responds, stating that Omran: (1) failed "to point to a single requirement or provision within the Contract related to the timeliness of deciding project issues" (gov't reply at 6), (2) failed "to point to a single contractual provision or requirement that the Government breached" (*id.* at 2), and (3) admitted in

---

[2] The government argued in its motion to dismiss that the Taliban invasion and the ANA's directive to evacuate the project site were intervening, superseding events that were the direct and proximate causes of Omran's abandonment of equipment and materials (gov't mot. at 12; *see also* gov't reply at 10).

6

its opposition brief that it "*raises no specific contract provisions related to its claim*" (*id.* at 2) (emphasis by government) (quoting app. opp'n at 7).[3]

It is well established that "the U.S. Government is not responsible for the sovereign acts of a foreign nation." *Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, 883 F.3d 1356, 1364 (Fed. Cir. 2016). Regarding contractor losses related to the action of third parties, "absent fault or negligence or an unqualified warranty on the part of its representatives, the Government is not liable for damages resulting from the action of third parties." *Oman-Fischbach Int'l (JV) v. Pirie*, 276 F.3d 1380, 1385 (Fed. Cir. 2002) (quoting *Dale Constr. Co. v. United States*, 168 Ct. Cl. 692, 698 (1964)). However, when fault or negligence is alleged, appellant can defeat summary judgment by placing at issue at least one fact relevant to the inquiry of whether the government's actions amounted to fault or negligence. *See Joseph Becks & Assocs., Inc.*, ASBCA No. 31126, 86-3 BCA ¶ 19,299 at 97,583.

Here appellant alleges that the government's fault or negligence was the reason for the alleged losses, not just the invasion of the Taliban (SOF ¶¶ 8-12). Specifically, appellant raises two issues. First, Omran argues that the government did not provide appellant with direction on the repairs necessary under the CAP. In support, Omran provides sworn testimony supporting its position that the repairs could have been made much earlier (especially given the completion dates of December 2019 and June 2020) and the equipment and personnel demobilized if the government had provided the direction requested (*see* Sworn Statement of Gerard A. Castelli ¶¶ 2-17). Second, Omran argues that the generators lost on site were the result of government fault due to its inability to provide the power source agreed to in the contract (SOF ¶¶ 10-12, *see* Sworn Statement of Gerard Castelli ¶¶ 18-29).[4] We are required to consider the

---

[3] In its reply brief and sur-reply brief, the government argued that the Board lacks jurisdiction to consider appellant's claim because it sounds in tort (gov't reply at 1, gov't sur-reply at 9). We disagree. Here, the factual predicate of Omran's claim (faulty or negligent contract administration by the government) arises not in tort, but out of an alleged breach in the administration of the contract by the government. *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) ("A breach of contract claim requires two components: (1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty") (citation omitted).

[4] The government's initial motion sought dismissal based upon appellant's alleged failure to state a claim upon which relief can be granted (gov't mot. at 1). According to the government, dismissal was appropriate "because Omran's claim for monetary damages is a result of the acts of third parties (the Taliban and the ANA), which cannot be attributed to the Government and for which the Government is not liable" (gov't mot. at 12). At this stage of the

7

evidence presented by the non-movant and draw all justifiable inferences in its favor. Although appellant has pointed to portions of the record which gave credence to its allegations that the government did not properly administered the contract, as well as provided sworn statements supporting its contentions, unfortunately for appellant, our analysis of the government's summary judgment motion does not end here.

IV. <u>Omran is Not Entitled to Relief Because the Breach Damages it Seeks Were Not Foreseeable at the Time of Contract Award</u>

The government's reply brief and sur-reply brief point to an additional element of appellant's claim which appellant must establish—that the damages Omran sustained (the Taliban seizing appellant's equipment, machinery, and power generators)—were foreseeable at the time of contract award in the event the government "breached" the contract by failing to timely respond to certain contractor requests for information (gov't reply at 8; *see also* gov't sur-reply at 12).[5] To prevail upon its claim, Omran must establish not only that the government owed it a contractual duty, and that the government breached that duty, thus harming Omran, but appellant also must establish that the claimed damages were reasonably foreseeable at the time of contract award. *Sci. and Mgmt. Res., Inc.*, ASBCA No. 60412, 19-1 BCA ¶ 37,236 at 181,243 (citation omitted).

The first problem for appellant is that the loss of its equipment and materials to the Taliban was a risk that it accepted upon contract award. As described above, the contract stated that the work would be performed in "dangerous or austere conditions" and that Omran "accepts the risks" of performing in such an environment (SOF ¶ 3). Moreover, Omran accepted the risk of securing its equipment in this environment (SOF ¶ 4).

_____

litigation, based upon our discussion above, we find that appellant has sufficiently stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] The government's initial motion to dismiss did not expressly discuss the issue of foreseeability of damages based upon the government's alleged breach. However, the government did argue in the context of "intervening force," that "the Taliban takeover and resulting directive from the ANA were harms very 'different in kind from that which would otherwise have resulted' . . . from the Government's allegedly 'improper and untimely decision making on the taxiway shoulder and electrical tie-in issues'" (gov't mot. at 13). The government expressly raised the issue of foreseeability in its reply brief, which was filed prior to our Order informing the parties that the government's motion would be treated as one for summary judgment and granting the parties the opportunity to submit additional briefing.

Furthermore, as stated by the government, "Omran cannot plausibly argue that the Government could have foreseen—at the time of contract formation in March of 2019—that its decision making with respect to the project's taxiway shoulder pavement and electrical system tie-in issues would have resulted in the abandonment of Omran's materials and equipment as a result of the ANA's directive and the Taliban takeover more than two years later on August 14, 2021" (gov't reply at 10). As support for its argument, the government cites the Restatement (Second) of Contracts § 351 for the proposition that "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach *when the contract was made*" (gov't reply at 9) (emphasis by government). The government likewise cites *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2001), in which the Court of Appeals for the Federal Circuit stated that "the damages must have been foreseeable at the time the parties entered the contract, which requires that they 'be the natural and proximate result of the breach.'" (Quoting *Locke v. United States*, 151 Ct. Cl. 262, 270, 283 F.2d 521, 526 (1960)); *see also Olin Jones Sand Co. v. United States*, 225 Ct. Cl. 741, 742-43 (1980) ("'The true concept of consequential damages involves consideration of the type of loss foreseeable by the contracting parties at the time of their agreement' . . . while damages resulting from the 'natural and probable consequences of the breach complained of [are recoverable,] damages remotely or consequently resulting from the breach are not allowed.'") (citation omitted).

According to the government, appellant, in its reply brief, "does not dispute that the abandonment of its materials and equipment (in response to the Taliban takeover and the ANA's directive to evacuate the project site) was an unforeseeable event at the time of contract formation" (gov't sur-reply at 12). The government states:

> The Contract at issue in this appeal was awarded on 26 March 2019. Gov't R4, Tab 12 at 1. According to Omran, "the Taliban took control of Afghanistan" more than two years later "in late summer of 2021." Compl. ¶ 14. Omran does not—and cannot—argue that its alleged damages (unrecoverable equipment and materials following the Taliban takeover in August 2021) were foreseeable at the time of contract formation in March 2019.

(Gov't sur-reply at 12)

Indeed, a review of the briefs submitted by appellant, as well as appellant's complaint, reveals that appellant has not alleged that the damages it sustained were foreseeable based upon the government's alleged breach. Although we recognize that foreseeability presents a question of fact, *Prudential Ins. Co. of America v. United States*, 801 F.2d 1295, 1301 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987), here

9

appellant failed to even address this issue, which is a requisite factual predicate of its breach claim. Appellant's failure to even allege, let alone present evidence, that it was foreseeable *at time of contract award* that the government's alleged breach would result in the Taliban seizing appellant's equipment, machinery, and power generators in August 2021, is fatal to Omran's appeal. *Grumman Aerospace Corp.*, ASBCA No. 46834, 05-2 BCA ¶ 33,084 at 164,001-02 (government breach of contract claim denied where government failed to show that "damages were foreseeable at the time of contract award"); *PAE Int'l*, ASBCA No. 45314, 98-1 BCA ¶ 29,347 at 145,923 (discussing issue of foreseeability and holding that "the Government has not proved that the theft of the fuel oil was the natural and probable consequence of the breach"). Omran alleges in its complaint that a month or so prior to the Taliban's actions at the airfield, the government should have anticipated the Taliban would "take over key provincial capitals and key military installations" (SOF ¶¶ 15-16). Omran does not, however, allege the government should have foreseen this at the time of contract award in March 2019.

Accordingly, summary judgment in favor of the government on the issue of foreseeability, an essential element of its motion, is appropriate here. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"); *GSC Constr., Inc.*, ASBCA No. 61380, 20-1 BCA ¶ 37,626 at 182,666 ("The nonmoving party's failure to show an element essential to its case on which it has the burden of proof renders all other facts immaterial and entitles the moving party to summary judgment") (citing *Celotex*, 477 U.S. at 322-23).

CONCLUSION

The government's motion to dismiss for failure to state a claim upon which relief can be granted is denied. The government's motion for summary judgment is granted. The appeal is denied.

Dated: April 22, 2024

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

10

I concur                                            I concur


_____                     _____
OWEN C. WILSON                                      MICHAEL N. O'CONNELL
Administrative Judge                                Administrative Judge
Acting Chairman                                     Vice Chairman
Armed Services Board                                Armed Services Board
of Contract Appeals                                 of Contract Appeals


         I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 63414, Appeal of Omran,
Inc., rendered in conformance with the Board's Charter.

         Dated:  April 22, 2024


                                        _____
                                        PAULLA K. GATES-LEWIS
                                        Recorder, Armed Services
                                        Board of Contract Appeals