ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Afghanistan Trade Transportation Co., Ltd. ) ASBCA No. 59782
)
Under Contract No. W91B4N-06-A-0069 )

APPEARANCES FOR THE APPELLANT: Lawrence M. Prosen, Esq.
Christian F. Henel, Esq.
Thompson Hine LLP
Washington, DC

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Erica S. Beardsley, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE HARTMAN
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Appellant seeks $3,367,445.65 for line haul services it provided the Department
of the Army in Afghanistan during 2009 under a Blanket Purchase Agreement (BPA).
The Army moves for summary judgment contending: appellant pled guilty to bribing
a public official in 2008 to receive preferential treatment under the BPA; this criminal
act constituted a material breach of the duty of good faith and fair dealing it owed the
Army under the BPA; and appellant's material breach excused any subsequent breach
by the Army in not paying for line haul servicers furnished it. Appellant opposes the
Army's summary judgment motion contending: the Army has made no showing the
2008 fraud had any connection with services provided in 2009; case law does not
permit this Board to make broad, adverse inferences against appellant allowing the
Army to escape over $3 million in liability; and the Army therefore has failed to "carry
its burden on summary judgment."

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

Between 2006 and 2010, the United States maintained and operated a base
known as Bagram Airfield in Afghanistan. The United States Departments of the Air
Force and Army were responsible for different aspects of base operations. The Army
supervised all "Host Nation Trucking," i.e., bringing of deliveries to and from Bagram,
through the airfield's Transportation Operations Support Office (TOSO). The Army
assigned both military officers and contract employees to TOSO to review requests it
received for transportation and assign days of trucking services to companies based on
a company's performance record, i.e., whether that company was furnishing adequate

service—timely delivery and protection of deliveries from pilfering, among other things. If a company failed to provide adequate service, TOSO could penalize that company by removing it from the trucking schedule and awarding its work days to others. Rates paid to a company varied by trip and were based on the type of truck required, cargo transported, and distance traveled. (R4, tab 27 at 13-14, tab 29)

There were nine Afghan trucking companies working at Bagram (R4, tab 27 at 13). The Army issued a trucking company a BPA providing that: a contracting officer (CO) will provide that company with a listing of individuals authorized to place "calls" to trucking companies for line haul services; the company shall submit invoices for services it has provided in response to calls and not charge any amount in excess of charges set forth on a service "Price List;" and the company may terminate its participation in providing such services to the Army by submitting a written notice 30 calendar days prior to date of the proposed termination (*e.g.*, R4, tab 1 at 2, 12; compl. ¶ 12).

The basic procedure for acquiring trucking services was that the Army would issue a "BPA Call" and then issue pursuant to that Call a number of Transportation Movement Requests (TMRs) directing pick-up of specific cargo at a specified location and its delivery to another specified location. Once cargo was offloaded at destination, the military unit receiving it would sign, stamp or by other means document its receipt on the TMR issued. A CO's Representative (COR) later verified deliveries had been made by reconciling trucking company monthly delivery records with receiving or verification records. Following Army confirmation of delivery, a trucking company would invoice the Army for its services. (Compl. ¶¶ 12-14, 16-21, ex. D)

Appellant, Afghanistan Trade Transportation Co., Ltd. (ATT), is an Afghan trucking company that entered into a BPA, No. W91B4N-06-A-0069, in September 2006 regarding provision of line haul services, i.e., the transport of containerized dry goods, heavy equipment, and bulk fuels by overland truck convoy (R4, tabs 1, 27 at 14; compl. ¶¶ 2, 5, 11). While the initial period of the BPA was 1 September 2006 through 31 August 2008, the BPA's term was extended by mutual agreement (bilateral modifications) through October 2009 (R4, tab 1 at 2, tabs 5, 7, 9; compl. ¶ 11, ex. C).

On or about 10 February 2008, the Army assigned SSG James Paul Clifton to be the COR at TOSO responsible for the trucking service BPAs. One of the nine trucking companies possessing a BPA at Bagram, Afghan International Trucking (AIT), began paying SSG Clifton a bribe of $20,000.00 a month for preferential treatment. AIT was the only trucking company besides ATT that was willing to make pickups and deliveries in parts of Afghanistan deemed very dangerous (R4, tabs 3-4). In May of 2008, ATT entered into an illegal agreement with SSG Clifton similar to the one he had with AIT by which it paid him bribes of $15,000.00 a month in exchange

2

for assigning it an extra day of trucking service per month. Between 10 May 2008 and 18 October 2008, ATT sent from Dubai, United Arab Emirates, to Clifton's then girlfriend in Newport News, Virginia, by Western Union wire transfer service approximately $35,000.00 in payments. (R4, tab 27 at 14-15, tab 29)

From April through December of 2008, Diyana Montes worked for Kellogg, Brown & Root (KBR), a private contractor at Bagram Airfield, receiving TMRs from companies providing trucking services, reconciling any discrepancies between the amount of services described in the TMRs and amount of services the contractors claimed in their invoices, and after determining the invoices to be accurate passing them along to Army officials who relied upon her review in authorizing payment of the invoices (R4, tab 30). On numerous occasions from May 2008 through December 2008, Ms. Montes received and reviewed TMRs and invoices for services allegedly provided by ATT that fraudulently represented ATT provided services Ms. Montes knew were not in fact performed and she passed them along for payment with the knowledge the billings were fraudulent in exchange for ATT paying to her $50,000.00, consisting of $35,000.00 wired to her personal bank account in the U.S. and another $15,000.00 in cash paid to her on several occasions in Afghanistan (*id.*).

SSG Clifton pled guilty in August 2009 to one count of bribery for accepting bribes from AIT and ATT in exchange for providing them with preferential treatment (R4, tab 29). Ms. Montes pled guilty in October 2012 to bribery charges for her role in the scheme to fraudulently bill the Army for trucking services in Afghanistan (R4, tab 30). AIT pled guilty in June 2010 to one count of bribery with respect to $120,000.00 in payments it made to SSG Clifton and two others at TOSO, and agreed to pay fines totaling $3.36 million (R4, tab 29). ATT also pled guilty in June 2010 to one count of bribery with respect to the payments it made to SSG Clifton, and agreed to pay fines totaling $1.04 million (R4, tabs 27-29).

On 6 February 2009, the Army's CO appointed Kathleen McMahan as COR for the trucking service BPAs in Afghanistan (R4, tab 10). Unlike the Army appointment of SSG Clifton, COR McMahan's appointment contained two paragraphs outlining the COR "shall conduct business dealings with industry in a manner above reproach in every aspect and shall protect the U.S. Government's interest, as well as maintain its reputation for fair and equal dealings with all contractors" (*compare id. with* R4, tab 3).

ATT asserts that between 9 February and 27 April 2009 it received 37 TMRs pursuant to its BPA to make heavy equipment deliveries during the U.S. force surge that were not reconciled or paid for by the Army (compl. ¶¶ 92-96, 99). It further asserts it received 610 TMRs pursuant to its BPA for trucking services between 1 May and 29 September 2009 that were never paid for by the Army (compl. ¶¶ 35-91, 101-02). According to an ATT representative, this period of time was chaotic

3

"throughout the theater" due to: the Army's troop surge preceding the Afghan election; resulting security curfews; and widespread courier route closures. The representative added:

> [O]f the 64 fuel truck deliveries destine[d] for FOB Bostick, 30 of those tanker trucks were lost to hostilities. In just four days between 13 and 16 August 2009 ATT lost 18 tanker trucks in support of the 61st Cavalry Regiment at FOB Bostick. Despite repeated convoy attacks, driver casualties and loss of trucks, ATT literally went "above and beyond the call" in its attempts to resupply FOB Bostick and the 61st Calvary Regiment.

(R4, tab 35 at 3)

About three years later, ATT's Finance Manager advised the Army by letter as follows:

> On behalf of the owners of ATT and myself, may we take this opportunity to personally and sincerely apologize to the members of the Bagram Contracting Center for past misdeeds and lapse in judgment. On 24 June 2010, ATT satisfactory resolved all remaining issues with presiding U.S. federal authorities.

He further advised that ATT wished to obtain completion of TMR reconciliation and closeout with respect to the trucking services BPA, and appended documentation related to reconciliation. (R4, tab 31) Thereafter, for about 18 months, ATT and the Army exchanged correspondence concerning reconciliation (R4, tabs 32-35; compl. ¶ 4, exs. F, G). By letter dated 26 August 2014, the BPA's new Army CO located in Rock Island, Illinois, advised ATT "[i]f you wish for us to consider payment on your submitted invoice[s], you will need to certify your claim IAW Far Part 33" (R4, tab 36).

On 25 September 2014, ATT submitted to the CO a properly certified claim for $3,367,445.65 for 647 TMRs or instances between 9 February and 29 September 2009 that it had furnished the Army trucking services under the BPA (R4, tab 37). About six weeks later, on 17 November 2014, the CO issued a final decision denying ATT's claim because "ATT has failed to provide supporting documentation for their certified invoices," i.e., claim (R4, tab 39).

ATT timely appealed the CO's final decision to this Board. After ATT filed its complaint in this appeal, the Army filed a motion for summary judgment in lieu of an answer to the complaint.

4

The standards set forth in FED. R. CIV. P. 56 guide us in resolving a summary judgment motion. *J.W. Creech, Inc.*, ASBCA Nos. 45317, 45454, 94-1 BCA ¶ 26,459 at 131,661; *Allied Repair Service, Inc.*, ASBCA No. 26619, 82-1 BCA ¶ 15,785 at 78,162-63; Board Rule 7(c)(2). We will grant a summary judgment motion only if pleadings, depositions, interrogatory answers, and admissions on file, together with any affidavits or other evidence, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The Army, the party here seeking summary judgment, has the burden of demonstrating both of these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082. ATT, who is the non-moving party, is entitled to have all reasonable inferences drawn in its favor. *Celotex Corp.*, 477 U.S. at 322-24; *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000).

In seeking summary judgment, the Army contends ATT "perpetrated the first material breach of the contract" at issue by violating its contractual duty of good faith and fair dealing, and any "subsequent government breach" by the Army in not paying for contract services later provided by ATT is thus "excused." According to the Army, a holding otherwise would "ignore[] the [legal] doctrine of first material breach." The Army asserts that there are no material facts in dispute here that would preclude our grant of its summary judgment motion because ATT does not deny "the fact" it bribed Ms. Montes and SSG Clifton during 2008, "bribery is fraud," and fraud is "by definition" a "material" breach of contract. (Gov't reply br. at 1-2, 6)

ATT asserts the Army's summary judgment motion should be denied because the Army has not met its burden of showing any of the 2009 calls issued were affected by fraud (app. opp'n at 2-3). ATT additionally asserts the Army has waived its defense of "first material breach" with respect to trucking services ATT provided to the Army between February and September 2009 (*id.* at 3-4). ATT states, "The Government offers no factual, legal, or policy reason why it should be allowed to keep the benefit of over $3 million dollars in deliveries [ATT made during 2009] without offering any proof" that the 2009 deliveries/TMRs under the BPA were affected by fraud (*id.* at 4).

The Army is correct that, when a party to a contract is sued for breach, it may ordinarily defend on the ground that there existed at the time of breach, a legal excuse for nonperformance. *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1334 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005) (citing *College Point Boat Corp. v. United States*, 267 U.S. 12, 15 (1925)). As the U.S. Court of Appeals for the Federal Circuit has explained, courts often impose liability on the party that committed

5

the first material breach of contract based on the principle that, if performances are to be exchanged under an exchange of promises, each party is entitled to assurance that he will not be called on to perform his remaining duties if there already has been an uncured material failure of performance by the other party. *Christopher Village,* 360 F.3d at 1334 (citing RESTATEMENT (SECOND) OF CONTRACTS § 237, cmt. B (1981)).

The Army is also correct that every contract contains a covenant between the parties to perform in good faith and fair dealing, and a failure to fulfill this duty is a breach of contract. *Laguna Construction Co.,* ASBCA No. 58324, 14-1 BCA ¶ 35,748 at 174,948 (citing *Metcalf Constr. Co. v. United States,* 742 F.3d 984, 990 (Fed. Cir. 2014)). This principle long has been applied to contracts entered into by private parties and the Federal government. *Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817, 828 (Fed. Cir. 2010), *cert. denied,* 562 U.S. 1178 (2011); *Malone v. United States,* 849 F.2d 1441, 1445-46 (Fed. Cir. 1988).

Finally, the Army is correct that it is well established any degree of fraud is "material" as a matter of law. *Christopher Village* 360 F.3d at 1335; *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1278 (Fed. Cir. 1985). Binding precedent "underscores the necessity for the Government to be secure in its confidence in its contractors." *Christopher Village,* 360 F.3d at 1335 (quoting *Joseph Morton Co.,* 757 F.2d at 1278).

The Army errs, however, in treating ATT as having entered into only "one contract" for the provision of trucking services to the Army in Afghanistan, i.e., the 2006 BPA. BPAs generally are held not to be a "contract." Rather, they usually are "characterized as frameworks for future contracts – 'a set of ground rules as it were.'" Under most BPAs, no obligations are assumed by either party until orders are given by the government and accepted by a contractor. A "contract" generally is formed only when the contractor accepts a specific government order. *E.g., Crewzers Fire Crew Transport, Inc. v. United States,* 741 F.3d 1380, 1381 (Fed. Cir. 2014) (quoting *Modern Sys. Tech. Corp. v. United States,* 979 F.2d 200, 204 (Fed. Cir. 1992)); *accord Comptech Corporation,* 08-2 BCA ¶ 33,982 at 168,082; FAR 13.302-3(a); FAR 13.303-1(a); FAR 16.703.

Based upon the limited materials referenced in the Army's summary judgment motion, it appears that the Army was not required to place any orders with ATT (R4, tab 27 (Army assigned days of service based upon its determination of a company's record of performance and was free to remove a company from schedule of trucking service providers)), and ATT was not required to accept orders (*see* R4, tab 4 (some BPA trucking companies declined to provide service for the most dangerous parts of Afghanistan), tab 1 at 2 (the contractor may opt out of BPA)). The 2006 BPA at issue here therefore appears to reflect illusory promises not imposing obligations on either party. To be valid and enforceable, a contract must have both consideration and

6

sufficient definiteness. *Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000). Our court of appeals has held that, "[i]t is axiomatic that a valid contract cannot be based upon the illusory promise of one party, much less illusory promises of both parties." *Crewzers Fire Crew*, 741 F.3d at 1382-83 (quoting *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1062) (Fed. Cir. 2002)). Accordingly, it appears that contracts arose between ATT and the Army with respect to provision of trucking services only when ATT accepted specific Army orders (TMRs) issued for such services.

All of the TMRs disputed in this appeal were issued during 2009 (compl. ¶ 2) and accepted by ATT during 2009 (compl. ¶¶ 36-102). The covenants between the parties to perform those 2009 contracts in good faith and fair dealing therefore also arose in 2009 (compl. ¶¶ 2, 36-102). All of the actions the Army relies on here in its summary judgment motion as constituting breaches of ATT's covenant to perform in good faith and fair dealing (bribery of SSG Clifton and Ms. Montes) occurred during 2008 with respect to contracts entered into during 2008 or earlier, before the parties' 2009 contracts and covenants of good faith and fair dealing ever came into existence. While the Army has shown here ATT materially breached its covenants of good faith and fair dealing with respect to performance of the parties' 2008 contracts, the Army has not shown ATT materially breached the covenants of good faith and fair dealing arising from the parties' 2009 contracts at issue in this appeal prior to the Army's alleged breach of those 2009 contracts. The Army, therefore, has failed to show it is entitled to judgment as a matter of law and carry its burden with respect to grant of summary judgment.

## CONCLUSION

For reasons stated above, we deny the Army's motion for summary judgment. The Army shall file its answer to ATT's complaint here within 45 days of the date of this decision.

Dated:  18 August 2015

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

7

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59782, Appeal of Afghanistan Trade Transportation Co., Ltd., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals