226 F.3d 1329 (Fed. Cir. 2000)
 ACE-FEDERAL REPORTERS, INC., ANN RILEY & ASSOCIATES, LTD., AR-TI RECORDING, INC., CALIFORNIA SHORTHAND REPORTING, EXECUTIVE COURT REPORTERS and MILLER REPORTING CO., INC., Appellants,
v.
David J. Barram, ADMINISTRATOR, GENERAL SERVICES ADMINISTRATION, Appellee.
 99-1258
 United States Court of Appeals for the Federal Circuit
 DECIDED: September 28, 2000
 
 Appealed from: General Services Administration Board of Contract AppealsRonald K. Henry, Kaye, Scholer, Fierman, Hays, Handler, LLP, of Washington, DC, argued for appellants. Of counsel was Mark A. Riordan.
 Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director. Of counsel on the brief was John E. Cornell, Sr. Assistant General Counsel, Office of the General Counsel - LP, General Services Administration, of Washington, DC.
 Before MAYER, Chief Judge, MICHEL and SCHALL, Circuit Judges.
 MAYER, Chief Judge.
 
 
 1
 Ace-Federal Reporters, Inc., Ann Riley & Associates, Ltd., AR-TI Recording, Inc., California Shorthand Reporting, Executive Court Reporters, and Miller Reporting Co., Inc. (collectively, the "contractors") appeal from a decision of the General Services Administration (GSA) Board of Contract Appeals, denying their claims for breach of contract. See Ace-Federal Reporters, Inc. v. Gen. Servs. Admin., 99-1 B.C.A. (CCH) ¶ 30,139 (Oct. 30, 1998). Because the board erred in concluding that the terms of the contracts preclude recovery of lost profits, we reverse and remand.
 
 Background
 
 2
 In 1988, GSA issued a request for proposals for transcription and court reporting services for various federal agencies. The request for proposals contemplated multiple award schedule contracts to be "made with more than one supplier for comparable items at either the same or different prices for delivery to the same geographical area." 41 C.F.R. § 101-26.408-1(A) (1988). GSA awarded contracts to ten companies, including the six appellants.
 
 
 3
 Included in each contract was the standard requirements clause found in Federal Acquisition Regulation § 52.216-21(c) which provides, "[e]xcept as this contract otherwise provides, the Government shall order from the Contractor all the supplies or services specified in the Schedule that are required to be purchased by the Government activity or activities specified in the Schedule." 48 C.F.R. § 52.216-21(c) (1988). Each contract also included a termination for convenience clause that limited government liability should GSA cancel them. The parties stipulated that during the term of the contracts, some of the agencies covered by the contracts contracted for transcription services with companies that were not parties to the contracts. According to 41 C.F.R. § 101-26.401-3 (1988), and other evidence in the record, this was not permitted absent a waiver from GSA.
 
 
 4
 In 1995, the contractors filed claims with the contracting officer alleging breach of their contracts because of the unauthorized off-schedule purchases and seeking lost profits and consequential damages. The contracting officer declined to take action. The contractors appealed to the board, which consolidated their claims. Before the board, GSA raised six defenses to any potential liability: (1) the termination for convenience clause precludes recovery of lost profits; (2) the contractors should not recover damages because they had received orders in excess of estimates in the request for proposals; (3) grand jury reporting was not covered by the contracts; (4) off-schedule purchases made at a lower price were permissible; (5) the contracts were illusory because the exceptions, when taken together, rendered the consideration valueless; and (6) the contractors' claims are barred by the statute of limitations in the Contract Disputes Act, 41 U.S.C. § 605(a), as amended by the Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 2351, 108 Stat. 3243, 3322 (1994).
 
 
 5
 The board specifically rejected the last defense, but did not address the remainder of them because it decided sua sponte that because these were not requirements contracts, none of the contractors were guaranteed any business. Therefore they were not entitled to lost profits or consequential damages. The contractors appeal, but do not seek review of the board's denial of their claims for consequential damages.
 
 Discussion
 
 6
 We have jurisdiction over an appeal from a decision of an agency board of contract appeals by virtue of 28 U.S.C. § 1295(a)(10) (1994). The only issues in this case are questions of law which we review de novo. See Caldwell & Santmyer, Inc. v. Glickman, 55 F.3d 1578, 1581 (Fed. Cir. 1995).
 
 
 7
 "[C]ontract terms . . . must fit into one of the three possible types of supply contracts: those for a definite quantity, those for an indefinite quantity and those for requirements," Torncello v. United States, 681 F.2d 756, 761-62 (Ct. Cl. 1982), although we should not be blinded by how one labels a contract. See Maint. Eng'rs, Inc. v. United States, 749 F.2d 724, 726 n.3 (Fed. Cir. 1984). The government's argument is that because these contracts do not contain terms for a minimum or specific quantity, they are not enforceable unless they are requirements contracts. In distinguishing these contracts from requirements contracts, the government stresses that the contractual language allowed the agencies to consider other sources to assure that the purchases of services are made to the best advantage of the government.[1] The government also emphasizes that none of the contractors had an exclusive arrangement to provide services.
 
 
 8
 The contractors respond that even though the contracts did not guarantee them any work individually, the contractual language should not be interpreted as allowing the agencies to ignore the regulatory and contractual obligations that restricted their placement of orders. The contractors further assert that lost profits are the appropriate remedy for this breach under Locke v. United States, 283 F.2d 521 (Ct. Cl. 1960).
 
 
 9
 In Locke, GSA awarded contracts for typewriter repair to four companies in the same geographic area. The contracts provided that the companies were to be listed in a Federal Supply Schedule. Under the contracts, government agencies were required, with few exceptions, to use the companies listed in the schedule. The agencies could choose any company from the schedule, and each company listed on the schedule was obligated to perform the services specified in the contract. Locke performed some services, but after several months GSA terminated the contract for default and removed his name from the schedule. Locke filed an appeal with GSA's board of review, which found that GSA terminated the contract without proper cause, but denied his request for lost profits.
 
 
 10
 On appeal, the government took the position that lost profits are not recoverable because the contract did not guarantee that any work would be available or that Locke would be awarded it over any other company on the schedule. The court disagreed, holding that the possibility of obtaining work from a listing in the schedule had real business value, even if there was no guarantee of obtaining a certain amount of work. The government also asserted that any damages were too speculative to prove. Again, however, the court determined that "the plaintiff gave valuable consideration for the promise of a performance which would have given him a chance at business and profit," and "where the value of a chance for profit is not outweighed by a countervailing risk of loss, and where it is fairly measurable by calculable odds and by evidence bearing specifically on the probabilities that the court should be allowed to value that lost opportunity." Id. at 524.
 
 
 11
 A contract is not unenforceable merely because it does not fit neatly into a recognized category. To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation, see generally Restatement (Second) of Contracts §§ 71, 72 (1981), and sufficient definiteness so as to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Id. § 33(2); see, e.g., Aviation Contractor Employees, Inc. v. United States, 945 F.2d 1568, 1572-74 (Fed. Cir. 1991). In our case, as consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions. The government's promise, just as in Locke, has substantial business value because there were only between two and five authorized sources in each of the designated geographic regions. Rather than vying with 18,000 other transcription services for the government's business, the contractors had to compete with only one to four other contractors. The government cites the multiple awards clause of the contract stating that the agencies are instructed to consider other sources besides the contract sources. See note 1, supra. The government interprets this clause as allowing the agencies to purchase the contractually covered services from any source as they saw fit. However, the contractual language states that the agencies should "consider" other sources; it does not give them authority to contract with companies other than those listed absent a waiver. Therefore, each time an agency that did not obtain a GSA waiver[2] arranged for services covered under the contract from a non-contract source, the government did not act within the limited exception and breached the contract.
 
 
 12
 There is sufficient content to the contracts to permit the determination of an appropriate remedy. "If a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery," and the board's duty is to "make a fair and reasonable approximation of the damages." Locke, 283 F.2d at 524.
 
 
 13
 The relevant factors in determining the value of a chance for obtaining business include: the total amount of business the plaintiff would have been eligible for; any material facts that would have tended to prevent the plaintiff from receiving his proportionate share of such business; and the average expenses incurred in fulfilling the obligations of the contract. See id. In this case, the parties have stipulated the amount of additional transcription contracted off-schedule to the page and the amount of each contractor's market share of business. These stipulations would be a good start on a "fair and reasonable" basis from which to calculate damages.
 
 
 14
 The board alluded to the government's argument that it should impose a constructive termination for convenience on these contracts to the extent unauthorized off-schedule purchases were made, in effect multi-, mini- terminations for convenience. The government pursues this argument here citing Krygoski Const. Co. v. United States, 94 F.3d 1537, 1545 (Fed. Cir. 1996). The contractors urge us to reach the issue even though the board did not decide it because it is solely a matter of law and it will advance these cases, which are already into their fourth and fifth years.
 
 
 15
 We think it is advisable to address the point because we believe that in the context of this case it is a non-issue. The GSA contracting officer insisted throughout the administration of these contracts that they be performed as written. She resisted efforts by using agencies to deviate from the schedule, and did not condone rogue actions by agencies in defiance of her role as contracting officer. The agencies had no authority to terminate these contracts, in whole or in part. Their unauthorized actions were breaches, pure and simple.
 
 
 16
 "[N]o decision has upheld retroactive application of a termination for convenience clause to a contract that had been fully performed in accordance with its terms." Maxima Corp. v. United States, 847 F.2d 1549, 1557 (Fed. Cir. 1988). We see no reason in law or logic to impose a retroactive constructive termination for convenience here. The concept is a fiction to begin with, but there has to be some limit to its elasticity. The contractors stood ready to perform throughout, did perform those orders placed, and the contract ended.
 
 Conclusion
 
 17
 Accordingly, the decision of the General Services Administration Board of Contract Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 COSTS
 
 18
 Each party shall bear its own costs.
 
 REVERSED AND REMANDED
 
 
 NOTES:
 
 
 [1]
 Section M.2 of the contracts provide:
 Offerors are advised that agencies which contemplate placing orders for services contained in the contracts resulting from this request for proposal[s] will be instructed, except where precluded by administrative expense or urgency considerations, to consider equally those contract sources and other sources to assure that purchases of such services are made to the best advantage of the Government, taking into consideration[ ] the technical requirements, price, availability, delivery time and any other pertinent factors.
 
 
 [2]
 The pertinent regulation reads: Requests for waivers.
 (a) When an ordering office that is a mandatory user under a schedule determines that items available from the schedule will not meet its specific needs, but similar items from another source will, it shall submit a request for waiver to the Commissioner, Federal Supply Service (F), GSA, Washington, DC 20406, except as provided in (b) below. Requests shall contain the following information:
 (1) A complete description of the required items, whenever possible; e.g., descriptive literature such as cuts, illustrations, drawings, and brochures that explain the characteristics and/or construction.
 (2) A comparison of prices and the technical differences between the requested item and the schedule item, identifying as a minimum the--
 (i) Inadequacies of the schedule item to perform required functions; and
 (ii) Technical, economic, or other advantages of the item requested.
 (3) Quantity required.
 (4) Estimated annual usage or a statement that the requirement is nonrecurrent or unpredictable.
 (b) Ordering offices shall not initiate action to acquire similar items from nonschedule sources until a request for waiver is approved, except as otherwise provided in interagency agreements.
 48 C.F.R. § 8.404-3 (1999).
 "GSA granted waivers to the Federal Communications Commission, the Federal Energy Regulatory Commission for the Office of Administrative Law Judges only, and the Department of Labor, Branch of Hearings and Review." Ace Federal at 99-1 B.C.A. ¶30,139 at 149,105.