# United States Court of Appeals for the Federal Circuit

---

**CREWZERS FIRE CREW TRANSPORT, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5104

---

Appeal from the United States Court of Federal Claims in No. 11-CV-0607, Judge Susan G. Braden.

- - - - - - - - - - - - - - - - - - - - - -

**CREWZERS FIRE CREW TRANSPORT, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5105

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0064, Judge Susan G. Braden.

---

Decided:  February 6, 2014

―――――――――――――

CYRUS E. PHILLIPS, IV, Albo & Oblon, L.L.P., of Arlington, Virginia, argued for plaintiff-appellant.

ELLEN M. LYNCH, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee.  With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, BRYANT G. SNEE, Deputy Director, and SHELLEY D. WEGER, Trial Attorney.  Of counsel on the brief was AZINE FARZAMI, Attorney, Office of the General Counsel, General Law Division, United States Department of Agriculture, of Washington, DC.

―――――――――――――

Before RADER, *Chief Judge,* CLEVENGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Crewzers Fire Crew Transport, Inc. ("Crewzers") appeals from two related decisions of the United States Court of Federal Claims dismissing its causes of action for lack of jurisdiction.  *See Crewzers Fire Crew Transport, Inc. v. United States*, 111 Fed. Cl. 148 (2013) ("*Crewzers I*"); *Crewzers Fire Crew Transport, Inc. v. United States*, 111 Fed. Cl. 267 (2013) ("*Crewzers II*").  In each decision, the trial court held that a blanket purchase agreement ("BPA") between Crewzers and the United States Forest Service was not a binding contract invoking jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a).  For the reasons below, we *affirm*.

I.

On March 30, 2011, Crewzers became one of several awardees under a BPA with the Forest Service to provide crew carrier buses. These buses are heavy duty vehicles used to transport fire crews to wildfires and other disaster areas located within regional and national wilderness zones. Two weeks later, on April 11, 2011, Crewzers was awarded another multiple-award BPA from the Forest Service, this time to provide flame retardant tents to disaster areas as needed. Both BPAs established dispatch priority lists that ranked each awardee's available re-sources (*e.g.*, crew carrier buses or flame retardant tents) within each of six geographic zones. When an emergency arose, the Forest Service was to submit an order for the highest-ranked (*i.e.*, lowest-priced) resource available on the dispatch priority list within the relevant geographic zone. Once the Forest Service submitted an order for a particular resource and the contractor decided to accept the order, a contract was formed and the contractor was obligated to provide the requested resource in response to the identified emergency. These BPAs are thus appropri-ately characterized as frameworks for future contracts— "a set of ground rules as it were, and no obligations are assumed by either party until orders are given by the Government and accepted by the contractor." *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 204 (Fed. Cir. 1992) (internal quotations omitted).

According to the agreements, "If a Contractor cannot be reached or is not able to meet the time and date need-ed, the dispatcher may proceed with contacting the next resource on the dispatch priority list." BPA § D.6.5.1. The Forest Service was also given the discretion to devi-ate from these dispatch priority lists as needed to respond effectively to actual fire conditions. The BPAs explicitly provided that any such deviations would "not be deemed a violation of any term or condition of this Agreement." BPA § D.6.1.c.

Because of the sporadic and unpredictable nature of wildfires and other emergencies, the Forest Service did not make any guarantee that it would actually place orders under these BPAs. By the same token, the terms of the BPAs required Crewzers to accept orders only to the extent it was "willing and able[,]" as noted in the clause below:

> This solicitation will result in multiple agreements. The dollar limitation for any individual order is $150,000.00  Since the needs of the Government and availability of Contractor's resources during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the Government, the Contractor shall furnish the resources listed herein *to the extent the Contractor is willing and able at the time of order*. Due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED.

BPA § B, Pricing & Estimated Quantity (emphasis added).

In August 2011, the Forest Service notified Crewzers that it was terminating its BPA for crew carrier buses after Crewzers allegedly responded to several orders with unauthorized vehicles and, in one instance, attempted to bill the Forest Service at a higher-than-authorized rate. In November 2011, the Forest Service also terminated Crewzers's BPA for flame retardant tents after Crewzers allegedly provided tents that did not meet the BPA's specifications or, in some cases, failed to deliver the tents on time. Crewzers filed separate suits in the Court of Federal Claims challenging both terminations and asserting, among other things, that the Forest Service acted in bad faith. In both suits, Crewzers sought a declaratory judgment that it was entitled to breach of contract damages, or alternatively, to reinstatement of the BPAs.

On May 31, 2013, the Court of Federal Claims issued nearly identical opinions in both cases granting the Government's motions to dismiss for lack of jurisdiction. The trial court held that the BPAs between Crewzers and the Forest Service were not binding contracts because they lacked "the necessary mutuality of consideration required for an enforceable contract[.]" *Crewzers I*, 111 Fed. Cl. at 158; *Crewzers II*, 111 Fed. Cl. at 276. The trial court therefore concluded that it lacked jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a).

Crewzers appealed the dismissals to this Court on July 12, 2013. We have jurisdiction over these appeals, which were consolidated for argument purposes, pursuant to 28 U.S.C. § 1295(a)(3).

## II.

To invoke the Court of Federal Claims's jurisdiction under the Tucker Act, a contractor must first show that its claims arose out of a valid contract with the United States.[1] Therefore, the question here on appeal is whether Crewzers presented a well-pleaded allegation that the BPAs between Crewzers and the United States constituted binding contracts sufficient to establish Tucker Act jurisdiction—a question of law reviewed *de novo*. *See, e.g.*, *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1061 (Fed. Cir. 2002).

"To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation

---

[1]    Under the Tucker Act, the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The Tucker Act also gives the trial court jurisdiction over claims or disputes arising under the Contract Disputes Act. *See id.* § 1491(a)(2).

. . . and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000) (internal quotations omitted) (internal citations omitted). "A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances . . . ." Restatement (Second) of Contracts § 77 (1979).

We hold that Crewzers has failed to present a non-frivolous allegation that the BPAs at issue here are binding contracts. These BPAs reflect illusory promises that do not impose obligations on either party. The Forest Service is not required under the terms of the BPAs to place any orders with Crewzers. Likewise, Crewzers promised only to accept orders to the extent it is "willing and able[,]" and is thus perfectly free not to accept any orders at all. "It is axiomatic that a valid contract cannot be based upon the illusory promise of one party, much less illusory promises of both parties." *Ridge Runner*, 287 F.3d at 1062 (citing Restatement (Second) of Contracts § 71(1)).

Our previous decisions in *Ridge Runner* and *Modern Systems Technology Corporation* are instructive on this issue. *See Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (Fed. Cir. 2002); *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200 (Fed. Cir. 1992). In *Ridge Runner*, we concluded that a tender agreement issued by the Forest Service—which contained language nearly identical to Crewzers's BPAs—lacked the required mutuality of obligation to be considered a valid contract.[2] Just like

---

[2] Although the agreement at issue in *Ridge Runner* was not labeled a "blanket purchase agreement," we have noted in the past that "we should not be blinded by how

Crewzers's BPAs, the agreement in *Ridge Runner* provided that, "upon request of the government, the contractor shall furnish the equipment offered herein *to the extent the contractor is willing and able at the time of order.*" 297 F.3d at 1060 (emphasis original). The agreement further warned that the Forest Service could not "guarantee there will be a need for the equipment offered nor does it guarantee orders will be placed against the awarded agreements." *Id.* Based on this language, we held that the tender agreement was not a binding contract:

> The Agreements contained no clause limiting the government's options for firefighting services; the government merely "promised" to consider using Ridge Runner for firefighting services. Also, the Tender Agreement placed no obligation upon Ridge Runner. If the government came calling, Ridge Runner "promised" to provide the requested equipment only if it was "willing and able."

*Id.* at 1062. This same "willing and able" language is present in Crewzers's BPAs. Therefore, just as in *Ridge Runner*, we must conclude that this language placed no obligation on Crewzers to accept orders from the Forest Service and cannot provide the consideration necessary to create a binding contract. Crewzers has pointed us to nothing else in the BPAs that would obligate Crewzers to accept orders from the Forest Service.[3]

---

one labels a contract." *Ace-Federal Reporters*, 226 F.3d at 1331.

[3] Crewzers argues that *Ridge Runner* is not controlling because the contractor in that case sought money damages pursuant to a contract claim under the Contract Disputes Act, whereas Crewzers here is seeking "equitable relief under the Contract Disputes provisions." Crewzers's attempt to distinguish monetary claims from

We reached the same conclusion in *Modern Systems* with respect to a basic pricing agreement issued by the United States Postal Service. In *Modern Systems*, this Court affirmed "on the basis" of the trial court's opinion, which concluded that the basic pricing agreement was not a binding contract because "the Postal Service is not obligated to place any orders, and . . . the contractor is not bound unless it accepts an order. The effect of this . . . is that the [basic pricing agreement] itself does not create any enforceable obligations between either party." *Modern Sys.*, 979 F.2d at 202. To be sure, we do not rely on *Modern Systems* as any form of precedent and, to avoid confusion as to what constitutes precedent in this Court, we no longer affirm "on the basis of" a trial court's opinion. We nevertheless find persuasive, and particularly applicable here, the reasoning in *Modern Systems* given the structure of the agreements in question, which do not require the Government to order *any* work from the contractor even if the need for such work arises, and also do not require the contractor to accept the work if ordered. *Id.* at 206.

Crewzers argues that our decision in *Ace-Federal Reporters* mandates a finding that its BPAs are, in fact, binding contracts. *See Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329 (Fed. Cir. 2000). We disagree. *Ace-Federal Reporters* concerned a multiple award sched-

---

nonmonetary claims brought under the Contract Disputes Act has no basis in law, as the trial court's jurisdiction in both instances depends on the existence of a valid and enforceable contract between the contractor and the United States. *See* 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7102(a) (providing that the Contract Disputes Act applies to "any express or implied contract . . . made by an executive agency" for the procurement of property, services, construction, or disposal of personal property).

ule contract for transcription and court reporting services. Under this contract, "as consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions" that allowed agencies to deviate from the schedule only by obtaining a waiver from the General Services Administration pursuant to 48 C.F.R. § 8.404-3 (1999).[4] *Id.* at 1332-33 & n.2. We held that the Government's promise provided sufficient consideration because of the "substantial business value" in limiting the competition pool to "between two and five authorized sources in each of the designated geographic regions," instead of the "18,000 other transcription services" available. *Id.* at 1332.

In contrast, there is no language in the BPAs at issue here that requires the Forest Service to purchase resources only from the contractors on the BPAs' dispatch priority lists, much less to purchase under specific terms, *i.e.*, value and quantity. The BPAs explicitly provided that "the number of fire orders in process and actual fire conditions at the time of dispatch may require a deviation from normal procedures in order to respond effectively to such conditions." BPA § D.6.1.c. Furthermore, "[a]ny such deviation will be within the discretion of [the] Government, and *will not be deemed a violation of any term or condition of this Agreement.*" *Id.* (emphasis added). This nearly unfettered discretion to vary from normal proce-

---

[4] This schedule contract was thus akin to—although not exactly the same as—a requirements contract. Under a requirements contract, the buyer agrees to exclusively use the seller for *all* of its needs, and the seller has the legal obligation to fulfill those needs. *See Torncello v. United States*, 231 Ct. Cl. 20, 681 F.2d 756, 768-69 (1982).

dures is much different from the defined, limited exceptions available to the Government in *Ace-Federal Reporters*.

Nor is there any language that requires Crewzers to ensure the availability of the requested resources. Under the terms of the BPAs, Crewzers is required to respond to an order only if "willing and able[.]" The BPAs also do not impose any penalties on Crewzers for failing to maintain the availability of its resources. As provided in the BPAs, "If a Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list." BPA § D.6.5.1. Unlike the schedule contract in *Ace-Federal Reporters*, Crewzers's BPAs do not impose any binding obligations on the parties and cannot be used to invoke Tucker Act jurisdiction. We therefore affirm the decision of the Court of Federal Claims dismissing Crewzers's suits for lack of jurisdiction.

## III.

We have considered the parties' other arguments, but they do not affect the outcome of our decision. We therefore affirm the decision of the Court of Federal Claims.

## AFFIRMED

### COSTS

Each side shall bear its own costs.