NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MCLEOD GROUP, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1389

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00628-LKG, Judge Lydia Kay Griggsby.

---

Decided: December 17, 2020

---

RICHARD P. RECTOR, DLA Piper LLP (US), Washington, DC, argued for plaintiff-appellant. Also represented by THOMAS EDWARD DALEY, DAWN STERN; JOSHUA B. DUVALL, Matross Edwards, LLC, Washington, DC.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

---

Before NEWMAN, LOURIE, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

McLeod Group, LLC ("McLeod") appeals from a decision of the United States Court of Federal Claims (the "Claims Court") dismissing Counts I, II, and V of McLeod's complaint for lack of subject matter jurisdiction. *See McLeod Grp., LLC v. United States*, 142 Fed. Cl. 558 (2019). The court held that a blanket purchase agreement ("BPA") between McLeod and the United States Department of Homeland Security ("DHS") was not a binding contract subject to appellate jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a). For the reasons below, we affirm.

## BACKGROUND

On September 29, 2011, DHS awarded a BPA to McLeod to, *inter alia*, provide DHS with management consulting services and to evaluate and recommend improvements in organizational structure, mission, and organization of core lines of business. The BPA states that the agreement "does not obligate any funds" and that "Task Orders will be placed against this BPA by DHS" for particular services. J.A. 84; J.A. 86. There is no dispute in this case that the task orders issued pursuant to the BPA, as opposed to the BPA itself, are contractual agreements. The BPA also states that the agreement is "not a contract" with the government. J.A. 86.

DHS issued seven task orders to McLeod under the BPA, during the period of September 30, 2011 through September 11, 2014. On October 4, 2016, McLeod submitted a certified claim to the DHS contracting officer alleging, *inter alia*, that DHS failed to execute its contractual responsibilities under the BPA in a good-faith and trusted manner, and that the agency acted in bad faith by not issuing additional within-scope task orders to McLeod. The

DHS contracting officer denied McLeod's claim on May 3, 2017 for failure to articulate a proper basis for the claim.

McLeod filed a complaint in the Claims Court on May 2, 2018, alleging that various DHS offices and officers breached their contractual obligations, acted in bad faith, and abused their discretion in the performance and administration of McLeod's BPA and task orders. On August 31, 2018, DHS filed a partial motion to dismiss Counts I, II, and V (the "BPA claims") of McLeod's complaint for lack of subject matter jurisdiction. The court granted the government's motion on April 4, 2019. It held that it did not possess jurisdiction to consider the BPA claims because McLeod failed to "establish that the BPA itself is a contract" with the government "that can be relied upon to establish [subject matter] jurisdiction in this case." *McLeod Grp., LLC v. United States*, 142 Fed. Cl. 558, 563–65 (2019). After reviewing the complaint and the BPA, the court found that there is an "absence of mutuality of consideration in the BPA" and that the BPA language shows that the parties did not intend for the BPA to be a contract. J.A. 13–14. On October 30, 2019, McLeod filed an unopposed motion for entry of partial final judgment with respect to the BPA claims, which the Claims Court granted on November 14, 2019. McLeod timely filed a notice of appeal on January 13, 2020.

## DISCUSSION

We review *de novo* the decision of the Court of Federal Claims to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). Under the Tucker Act, the Claims Court has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The Tucker Act also gives the court jurisdiction over claims or disputes

arising under the Contract Disputes Act. *See id.* § 1491(a)(2); 41 U.S.C. § 7104(b)(1); *see also Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 n.1 (Fed. Cir. 2014). "The party invoking jurisdiction has the burden to show compliance with the Tucker Act." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). "To invoke the Court of Federal Claims's jurisdiction under the Tucker Act, a contractor must first show that its claims arose out of a valid contract with the United States." *Crewzers*, 741 F.3d at 1382.

A contract with the government requires (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract. *See Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006). A failure of any of these requirements precludes the existence of a valid contract. Thus, an "absence of mutuality of obligation leads to the conclusion that the parties lacked the requisite contractual intent." *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 206 (Fed. Cir. 1992). Agreement language placing no obligation on a contractor to accept an order from the government "cannot provide the consideration necessary to create a binding contract." *Crewzers*, 741 F.3d at 1383. This court has held that BPAs that do not impose any binding obligations on the parties are not contracts. *See id.* at 1384.

McLeod argues that the Claims Court erred by applying a heightened pleading standard that required McLeod to establish the existence of a contract rather than merely a non-frivolous allegation of a contract with the government. Appellant's Br. 12. McLeod argues that jurisdiction is not defeated by the possibility that the averments might

fail to state a cause of action on which petitioners could actually recover, and the normal disposition would be to dismiss the complaint for failure to state a claim, rather than for want of jurisdiction. *Id.* at 14. McLeod asserts that when the existence of the contract turns on questions of fact and the terms of the contract in dispute, the Court of Federal Claims must first take jurisdiction before deciding contract term meanings. *Id.* According to McLeod, if dismissal is warranted because the alleged contract does not exist, the proper basis for such a dismissal is failure to state a claim upon which relief can be granted. *Id.* McLeod asserts that it made a non-frivolous allegation that the BPA is a binding contract; thus, the Claims Court has jurisdiction over the BPA claims and dismissal was unwarranted.

McLeod alleges that the BPA includes all the required elements of a binding contract. Regarding mutuality of intent, McLeod asserts that the issuance and performance of seven task orders pursuant to the BPA support McLeod's allegation that the BPA is a mutually acknowledged and binding agreement between the parties. Appellant's Br. 19. With regard to whether the BPA lacks consideration, McLeod asserts that it credibly alleged that both McLeod and DHS provided valuable consideration. McLeod argues that DHS provided consideration by promising that McLeod would be afforded the opportunity to bid on all available opportunities under the BPA. Appellant's Br. 26–27. McLeod argues that various BPA provisions impose obligations on McLeod that relate independently to the BPA, including that McLeod "shall be required" to "[a]ttend a post-award kickoff meeting." J.A. 92; Appellant's Br. 26.

The government responds that the Claims Court applied the proper pleading standard by requiring McLeod to demonstrate the existence of a valid contract in order to invoke the court's subject matter jurisdiction. The government argues that the court properly required McLeod to

allege facts that would establish that the BPA is a contract, a showing that McLeod could not make, given precedent holding that a BPA like McLeod's is not a contract. Appellee's Br. 14. According to the government, the court properly found that McLeod did not meet that burden by failing to show at least mutuality of intent and consideration. *Id.* at 19. The government thus contends that the Court of Federal Claims properly dismissed the BPA claims for lack of subject matter jurisdiction. *Id.* at 9.

We agree with the government, and the Claims Court, that McLeod failed to present a non-frivolous allegation that the BPA at issue here is a binding contract. To invoke the Claims Court's jurisdiction under the Tucker Act and the Contract Disputes Act, a contractor must show that its claims arose out of a valid contract with the United States. *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1491(a)(2); *Crewzers*, 741 F.3d at 1382. The Claims Court may dismiss a claim for lack of subject matter jurisdiction if the plaintiff fails to present a non-frivolous allegation that the underlying contract exists. *See id.* If an agreement is plainly not a contract on its face, then the agreement is insufficient to establish subject matter jurisdiction in the Claims Court under the Tucker Act. On its face, McLeod's BPA lacks both mutuality of intent and mutuality of consideration.

First, we note that our previous decision in *Crewzers* essentially controls this case. With regard to the BPA in *Crewzers*, similar to McLeod's BPA, the government in that case was not required under the terms of the BPAs to place any orders with the contractor. *Crewzers*, 741 F.3d at 1383. Likewise, the contractor was free to not accept any orders. *Id.* The BPAs at issue in *Crewzers* "reflect[ed] illusory promises that do not impose obligations on either party." *Id.* at 1382–83. Thus, this case is essentially indistinguishable from *Crewzers*.

Further, and contrary to McLeod's allegations, the BPA here lacks mutuality of intent. The BPA explicitly states that the agreement is "not a contract" with the government. J.A. 86. The issuance of task orders pursuant to the BPA, while themselves presumably contracts, does not transform the BPA into a contract. The Claims Court found McLeod's reasoning on this issue not persuasive, and we agree. *See* J.A. 15. The absence of mutuality of obligation, as indicated *infra*, also supports a conclusion that the parties lacked the requisite contractual intent. We therefore conclude that, with regard to the BPA itself, McLeod failed to plausibly allege a mutual intent to contract with the government.

We also agree with the government that the BPA also lacks mutual consideration. For example, McLeod did not identify any performance obligation placed on the government under the BPA, financial or otherwise. The BPA states that the agreement "does not obligate any funds," J.A. 84, which pretty much negates the idea of a contract. And we agree with the Claims Court that the BPA did not require the government to place any task orders. *See* J.A. 14. The ability of the government to offer McLeod an opportunity to accept task orders as set forth in the BPA is not consideration. Regarding McLeod's alleged obligations under the BPA, most of the alleged obligations McLeod identified are pursuant to task orders as provided for by the BPA terms. The sole requirement for McLeod to attend a post-award kickoff meeting does not in itself create sufficient mutual consideration in this case, where the alleged contract would require real performance as opposed to merely attending a meeting.

The BPA provides that the performance obligations will be specified in the task orders issued pursuant to the BPA. *See, e.g.*, J.A. 84 ("Delivery"); J.A. 86 ("Task Orders"); J.A. 87 ("Place of Performance"). The BPA provides "the ordering procedures" for "services ordered under this BPA."

J.A. 89; J.A. 84. The task orders would presumably constitute contracts while the BPA does not. An agreement like the BPA at issue in this case is not binding upon the government where no funds are obligated and the parties fail to plausibly allege that any other provision provides mutual consideration necessary to create a binding contract. *See Modern Sys.*, 979 F.2d at 204 (citing Gavin, *Government Requirements Contracts*, 5 Pub. Cont. L.J. 243, 246 (1972)) ("Usually the parties merely arrange to do business when the government places an order at the unit price named in the [BPA]. In such an agreement, there is nothing in writing which requires the government to take any ascertainable quantity or amount.").

## CONCLUSION

We have considered McLeod's remaining arguments but find them unpersuasive. For the reasons stated above, we affirm the decision of the Claims Court.

## **AFFIRMED**