ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Hallym Furniture Industrial Co., Ltd. | )  ASBCA No. 62782 |
| | ) |
| Under Contract No. W91QVN-20-A-0012 | ) |

OPINION BY ADMINISTRATIVE JUDGE SMITH
ON RESPONDENT'S MOTION TO DISMISS

      Appellant, Hallym Furniture Industrial Co., Ltd. (Hallym), appeals a contracting officer's final decision (COFD) that denied Hallym's certified claim seeking reinstatement of its Blanket Purchase Agreement (BPA) with Respondent, Department of the Army 411th Contracting Support Brigade, Korea (the government). Alternatively, Hallym's claim sought an equitable adjustment for three different types of costs arising from the cancellation of the BPA in the total amount of 169,500,000 Korean won (approximately $151,287.95).[1] The government has moved to dismiss the appeal, arguing that the BPA is not a valid contract as required by the Contract Disputes Act (CDA), therefore the Board lacks subject matter jurisdiction over Hallym's appeal. Hallym argues that the BPA is a contract because Hallym could not refuse a call order once it was issued. On balance, we find that this BPA is similar in nature to other BPAs that the Court of Appeals for the Federal Circuit has held to be non-contractual, thus we dismiss the appeal for lack of jurisdiction.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

      On April 6, 2020, the parties executed BPA No. W91QVN-20-A-0012 for repair of Government-owned wooden furniture. (R4, tab 1) The BPA indicates that the BPA "is not a contract" (*id.* at 5[2]), but the BPA contains contrary descriptive verbiage as well.[3] The BPA provided that individual repairs or groups of repairs

---

[1] The symbol for Korean won is "₩" so Hallym's total claim amount is shown as "₩169.5M."

[2] Paragraph 2 of the Performance Work Statement reads: "TERM OF BPA: This BPA is not a contract. If the contractor fails to perform in a manner satisfactory or no longer required by the government, this BPA may be cancelled with 30 days written notice to the contractor by the Contracting Officer (KO)." (R4, tab 1 at 5)

[3] For example, and most notably, "Type of Contract. The government contemplates award of a Fixed Unit Price, Multiple BPA's contract resulting from this solicitation." (R4, tab 1 at 21) (emphasis omitted). Also, "[t]he Contractor

would be separately issued as "purchases" or "calls" or "call orders."[4] (*Id.* at 8) The BPA provided that call orders would be issued on a rotating basis between Hallym and other awardee contractor(s). (*Id.* at 8) The BPA did not commit the government to issue any call orders. Instead, paragraph 13 of the Performance Work Statement provides that the government's obligation arises only from call orders actually made under the BPA: "EXTENT OF OBLIGATION: The Government is obligated under this BPA only to the extent of authorized purchases [*i.e.* call orders] actually made under the BPA." (*Id.* at 8) The BPA indicates that "[t]he Government may require continued performance of any services within the limits and at the rates specified in the contract" (*id.* at 21).

After award of the BPA, the Government issued ten call orders that were performed by Hallym. (R4, tab 10 at 5, 7; gov't reply at 4 ("appellant . . . performed all of the ordered repair work.")) Disagreements arose, however, with regard to the prices used by Hallym in its invoices, which were higher than in Hallym's BPA price proposal. (R4, tabs 13, 17-18, 23-27) To correct what it perceived to be defects in Hallym's invoices, the government itself generated the final invoice for Hallym's work (R4, tab 21; app. supp. R4, tab 4), but there is no evidence that the final invoice has been paid. ((gov't. reply br. at 5) (Appellant has not signed or acknowledged the final invoice)).

Based upon the government's opinion regarding Hallym's "unsatisfactory performance" relating to the invoices, the contracting officer notified Hallym on September 21, 2020, that the BPA would be cancelled in 30 days because "[Hallym] failed to perform this BPA services (*sic*) in a manner satisfactory to the Government." (R4, tab 20)[5] A written dialogue ensued where Hallym attempted to persuade the contracting officer to retract the cancellation notice. (R4, tabs 22-27) The dialogue

---

shall maintain own facility (minimum of 198m2 [60 Pyeong]) to perform this contract requirements (*sic*) for the entire contract period." (*Id.* at 8) Also, "[t]he Government may require continued performance of any services within the limits and at the rates specified in the contract." (*Id.* at 21) A word search of the BPA finds 45 uses of the word "contract," many of which are incidental like "Section I -- Contract Clauses" (*id.* at 14), but approximately 10 of which are not *i.e.* the clauses cited above. A document that the government intends not to be a contract should minimize use of the word "contract." Instead, "BPA" should be used to describe the agreement.

[4] The BPA uses all three terms to refer to the repair orders issued under the BPA. For purposes of this decision, we use the term "call orders."

[5] The BPA provides that "[i]f the contractor fails to perform in a manner satisfactory or no longer required by the Government, this BPA may be cancelled with 30 days written notice to the contractor by the Contracting Officer." (R4, tab 1 at 5)

2

devolved into allegations by both parties of "lack of business integrity and ethical business practices" (the government's allegation against Hallym, (R4, tab 24 at 2; *see also* gov't. reply br. at 2)) and a "gross administrative error" and improper or illegal changes to government documents (Hallym's allegations against the government). (Complaint at 6; *see* R4, tab 25)

When the government refused to withdraw the cancellation notice, instead finalizing the cancellation on November 11, 2020, (R4, tab 27), Hallym submitted a certified claim on November 25, 2020, seeking reinstatement of the BPA or, in the alternative, ₩169.5M for bid preparation costs, facility lease costs, and lost future profits – but not for payment of the government-generated invoice. (R4, tab 28) The government denied Hallym's claim in full with a COFD issued on December 7, 2020. (R4, tab 29) The COFD addressed each of Hallym's claim allegations regarding the BPA bid, award, price, invoice process, and claimed financial injuries as well as the government's basis for canceling the BPA. *Id.* This appeal timely followed the COFD.

## DECISION

### I. Standard of Review

We review the government's motion to dismiss for lack of jurisdiction pursuant to the standards of FED. R. CIV. P..12(b)(1). *L-3 Commc'ns Integrated Sys., L.P.*, ASBCA Nos. 60713, 60716, 17-1 BCA ¶ 36,865 at 179,624 (applying Rule 12(b)(1) because Board may look to Federal Rules of Civil Procedure for guidance where Board's rules are silent). When a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) denies or controverts allegations of jurisdiction, only uncontroverted factual allegations are accepted as true for purposes of the motion, and other facts underlying the jurisdictional allegations are subject to fact-finding based on the Board's review of the record. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816.

The government's motion distinguishes between a facial attack on the Board's jurisdiction and a factual attack, and the different standards that apply to our review of factual allegations (gov't. reply br. at 2-3). Though this digression is not incorrect, it is unnecessary because the government's motion to dismiss essentially relies upon no facts at all save for the BPA itself and, perhaps, the written content of Hallym's certified claim. Hallym, as the proponent of the Board's jurisdiction, bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence, which includes showing the existence of a valid contract. *See* 41 U.S.C. § 7105(e)(2); *General Mills, Inc. v. United States*, 957 F.3d 1275, 1284 (Fed. Cir. 2020); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶35,277 at 173,156. *See also Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014).

## II.     BPAs are Generally not Contracts, and the BPA Here is no Exception

Fundamental contract law dictates that there can be no contract without <u>mutual</u> obligations between the parties.  *See Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006).  Specifically, the Court of Appeals for the Federal Circuit has held that BPAs that do not impose binding obligations upon the parties are not contracts.  *Crewzers*, 741 F.3d at 1384; *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 206 (Fed. Cir. 1992) ("absence of mutuality of obligation leads to the conclusion that the parties lacked the requisite contractual intent"); *see also See Ridge Runner Forestry v. Veneman,* 287 F.3d 1058 (Fed. Cir. 2002).[6]  In particular, where the government is not obligated to place call orders, as here, the BPA "reflect[s] illusory promises that do not impose obligations on either party."  *Crewzers,* 741 F.3d at 1382–83.

The government's reliance upon *Crewzers* and *Modern Sys. Tech.* is apt, albeit with a *caveat*.  Despite the clause stating that "[t]his BPA is not a contract" here, the parties do not address the fact that the BPA also contains numerous clauses, discussed above, that refer to the document as a "contract."  (*See, e.g.* R4, tab 1 at 21 (Type of *Contract*))  While the internal contradictions in the BPA here, and the government's failure to address them, present a slightly different factual predicate than that found in *Crewzers* and *Modern Sys. Tech.*,[7] the government's motion goes beyond the conclusory self-characterization in the BPA and demonstrates that the nature of the BPA itself is, in fact, non-contractual.  For example, as in *Crewzers* and *Modern Sys. Tech,* Hallym's BPA did not require either party to take action until a call order was placed and accepted, supplying the consideration and mutual obligations missing from the BPA to create a contractual relationship between the parties.  Thus, Hallym's BPA is "a set of ground rules as it were, and no obligations are assumed by either party until orders are given by the Government and accepted by the contractor." *Modern Sys Tech.,* 979 F.2d 200 at 204.  On that key question, *Crewzers* and *Modern Sys. Tech.* are on point and we hold that the BPA here lacks mutual obligations and therefore is not a binding contract.

---

[6] The government also cites to *McLeod Grp. v. United States*, 840 F. App'x 525 (Fed. Cir. 2020), an unpublished Federal Circuit decision*,* and *Zhengxing v. United States*, 204 F. App'x 885 (Fed. Cir. 2006), which is "not citable as precedent." Rather than rely upon unpublished and non-precedential decisions, we instead refer primarily to *Crewzers* and *Modern Sys. Tech.*, which are valid and binding precedent and, except as noted below, on point with this appeal.

[7] Our review of *Crewzers, Modern Sys. Tech., McLeod* and *Zhengxing* found no indication of similar internal contradictions in those BPAs.

The government's hypotheticals at pages 12-13 of its reply brief, that the Board would not possess jurisdiction if the Government had simply stopped issuing call orders to Hallym instead of canceling the BPA, or if the Government had cancelled the BPA for a reason unrelated to Hallym's contract performance, or without stating a reason at all, is persuasive and further illustrates the non-obligatory, therefore non-contractual nature of the BPA. By plain reading of the provision that permits the cancelation of the BPA upon 30 days notice, the government had the prerogative to do exactly what it did here – cancel the BPA for any reason or none at all, and certainly when the government became dissatisfied with Hallym's performance related to its invoices.

Hallym attempts to distinguish its BPA from those found not to be contracts by arguing that Hallym could not refuse call orders once they were issued by the government, a so-called obligation not found in *Crewzers* that, Hallym argues, makes the BPA a valid contract (app. br. at 7-14). Even if true, that still does not provide sufficient contract consideration or a <u>mutual</u> obligation that makes the BPA a contract where the government is under no obligation to issue any call orders. *See Modern Sys.*, 979 F.2d at 204 (citing Gavin, *Gov't Requirements Contracts*, 5 PUB. CONT. L. J. 243, 246 (1972)) ("Usually the parties merely arrange to do business when the government places an order at the unit price named in the [BPA]. In such an agreement, there is nothing in writing which requires the government to take any ascertainable quantity or amount"). And we do not agree with Hallym's contract interpretation anyway. The BPA here provided that the government's obligations were created upon issuance of call orders (R4, tab 1 at 8), which must apply equally to Hallym – the parties' mutual obligations do not arise until the government initiates a call order *that is accepted by Hallym. Modern Sys. Tech.,* 979 F.2d at 204. The BPA here did not contain an express provision where Hallym would only perform call orders that it was "willing and able" to perform, as existed in *Crewzers*, 741 F.3d at 1381. It also did not explicitly provide that "[e]ach order that the [government] places *and the contractor accepts* becomes an individual contract," as in *Modern Sys. Tech*., 979 F.2d at 204 (emphasis added). But these clauses are little more than helpful statements of the obvious – each call order cannot become a contract until there is an offer *and* acceptance. As a result, the lack of a similar clause does not transform Hallym's BPA into a contract.

### III. The Board's Jurisdiction is Limited to Call Order Claims, but None are Presented Here

As discussed above, although Hallym and the government were parties to ten call orders, each of which was undisputedly a contract within the purview of the

CDA,[8] the BPA itself is not a contract and, contrary to Hallym's argument at page 14 of its opposition, Hallym's claim does not allege injury or costs related to the performance of Hallym's ten call orders. (R4, tab 28) As the government noted in its Answer at 57, Hallym may have some right to submit a call order claim if it suffered recoverable damages during call order performance (including, it appears, to seek payment upon the final invoice), but such claims were not made in Hallym's certified claim, were not addressed in the COFD, and we have no authority to adjudicate them in this appeal.

<u>CONCLUSION</u>

The government's motion is GRANTED and the appeal is DISMISSED for lack of jurisdiction.

Dated: September 2, 2021

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[8] The government's motion acknowledges that the call orders issued to Hallym were CDA contracts. (*See, e.g.*, gov't. reply br. at 9 (Upon the placement of a call order under a BPA, the call would become the contract, which then adopts the terms of the BPA; as a matter of law, for purposes of Contract Disputes Act jurisdiction; thus making 'any interpretation required of the terms of the BPA . . . an interpretation of the terms of [the call orders placed under the BPA] since those orders were the vehicles that formed the contracts.)) (quoting *Hewlett-Packard Co.*, ASBCA Nos. 57940, 57941, 13 BCA ¶ 35,366 at 173,548).

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62782, Appeal of Hallym Furniture Industrial Co., Ltd., rendered in conformance with the Board's Charter.

Dated: September 2, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

7